**PACIFIC MICRONESIAN LINES, INC.,**
**Appellant,**

v.

**NEW ZEALAND INSURANCE COM-**
**PANY, Ltd., Appellee.**

**No. 20577.**

United States Court of Appeals
Ninth Circuit.

Aug. 31, 1966.

**334**

W. Scott Barrett, Barrett, Ferenz & Trapp, Oakland, Cal., for appellant.

E. R. Crain, Agana, Guam, for appellee.

Before BARNES, JERTBERG and DUNIWAY, Circuit Judges.

BARNES, Circuit Judge:

Appeal from a final decision of the district court for the Territory of Guam, holding defendant-appellant liable to plaintiff-appellee. The district court had jurisdiction pursuant to 48 U.S.C. § 1424 (a). This court has jurisdiction pursuant to 28 U.S.C. §§ 1291, 1294(4).

Some time in early 1963 the J & G Warehouse Market of Agana, Guam, made an agreement with the Truk Trading Company of Truk, Eastern Caroline Islands, to sell Truk Trading Company a quantity of rice and other supplies on open account. J & G Warehouse Market contracted with appellant Pacific Micronesian Lines to transport the goods to Truk. J & G Warehouse Market delivered the rice on or before May 27, 1963 for shipment, and appellant issued a bill of lading showing 3000 sacks of rice, as represented by the shipper, J & G Warehouse Market. The testimony of witnesses and discussion between counsel and the court showed discrepancies in the amount of rice which was actually delivered by J & G Warehouse Market to appellant for shipment. J & G Warehouse Market pre-paid the costs of the transportation, paying for the shipment of a full 3000 sacks of rice.

Upon arrival in Truk, it was found by Truk Trading Company that only 2007 sacks of rice had arrived. Truk Trading originally put in a claim with its insurance adjuster for a shortage of 993 sacks plus a loss of 198 pounds of rice from a number of damaged sacks which had arrived. This claim was subsequently amended when an additional 325 sacks of rice arrived. The ultimate claim against the insurance company was for 668 sacks plus 198 pounds of rice.

Appellee New Zealand Insurance Company had insured the shipment for Truk Trading Company and paid Truk Trading for the loss. Appellee then brought suit against appellant on the theory that it was the assignee or subrogee of the claim of Truk Trading.

The case was tried to the court sitting without a jury. At the trial a notable difference of opinion as to burden of proof developed. Appellant contended that recovery by appellee was governed by the provisions of the Uniform Bills of Lading Act incorporated in section 2128g of the Guam Civil Code, or by the Bills of Lading provisions of 49 U.S.C. § 102. According to appellant's theory, under either of these code provisions it must be shown that the purchaser of goods relied on the statements in the bill of lading as to quality and quantity, and that he gave value for the goods relying on the description of the goods in the bill of lading. Until the purchaser of the goods described in the bill of lading has shown that he did these two things, the shipping company is not required to explain its failure to deliver the goods. However, the district court disagreed

with appellant and stated that the very fact that appellant had issued a bill of lading created a presumption that all of the goods described in the bill had been received, and that appellee's only burden was to show that the goods had not been received and the burden would then be on appellant to explain what had happened to the missing goods. During the course of the trial the appellant several times raised the point that appellee had to show that its assignor or subrogor (Truk Trading Company) had suffered a loss as a result of non-receipt of the goods, but the district court brushed this objection aside with the statement that since Truk Trading Company had been dealing with J & G Warehouse Market on an "open account" basis, it was obvious that Truk Trading had paid for the full amount of the shipment, and no further proof of loss would be required. The court never required appellee to show that Truk trading had relied on the bill lof lading nor that it had suffered a loss. At the conclusion of the trial the district court entered judgment for appellee for the full value of the missing rice, and this appeal followed.

## I. *Were the Statutes Applicable?*

■ Appellee in its brief declines to comment on the effect of the statutes cited by appellant other than to make some passing references to the fact that the statutes may not be applicable. We have examined the statutes cited and find them applicable.

Appellant cites 49 U.S.C. § 102. We note that the first section in "Chapter 4,—BILLS OF LADING" of Title 49 U.S.C. reads as follows:

"81. *Transportation included.*

Bills of lading issued by any common carrier for the transportation of goods in any Territory of the United States, or the District of Columbia, or from a place in a State to a place in a foreign country, or from a place in one State to a place in another State, or from a place in one State to a place in the same State through another State or foreign country, shall be governed by this chapter."

We think the words of this section make it clear that the provisions of Chapter 4 of Title 49 U.S.C. apply to the facts of this case. 49 U.S.C. § 102, upon which appellant relies, reads as follows:

"§ 102. *Liability for nonreceipt or misdescription of goods.*

If a bill of lading has been issued by a carrier or on his behalf by an agent or employee the scope of whose actual or apparent authority includes the receiving of goods and issuing bills of lading therefor for transportation in commerce among the several States and with foreign nations, the carrier shall be liable to (a) the owner of goods covered by a straight bill subject to existing right of stoppage in transitu or (b) the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods, or upon the shipment being made upon the date therein shown, for damages caused by the nonreceipt by the carrier of all or part of the goods upon or prior to the date therein shown, or their failure to correspond with the description thereof in the bill at the time of its issue."

The other statute, of similar import, relied upon by appellant is § 2128g of the Guam Civil Code. That section provides:

"§ 2128g. *Liability for nonreceipt or misdescription of goods.*

If a bill of lading has been issued by a carrier or on his behalf by an agent or employee the scope of whose actual or apparent authority includes the issuing of bills of lading, the carrier shall be liable to—

(a) The consignee named in a nonnegotiable bill; or

(b) The holder of a negotiable bill;

Who has given value in good faith relying upon the description therein of the goods, for damages caused by the nonreceipt by the carrier or a connecting carrier of all or part of the goods, or their failure to correspond

with the description thereof in the bill at the time of its issue. * * * "

The effect of these two statutory provisions is the same: In certain limited circumstances they permit a carrier to avoid liability for failing to deliver goods, or for delivering goods which do not meet the description of the carrier's bill of lading, by showing that the carrier never received the goods which are listed on the bill of lading. The circumstances in which the defense of nonreceipt by the carrier is available to the carrier are limited to those where the consignee or holder of the bill of lading has not relied on the description in the bill of lading or has not paid value for the goods relying on the description in the bill of lading. 9 Cal.Jur.2d, Carriers § 89 (1953), referring to the identical Uniform Bill of Lading Act section as that in the Guam Civil Code, describes the effect of the section in the following terms:

"§ 89. *Bill of Lading as Receipt.*— In addition to being a contract, the bill of lading serves as a receipt as to the quantity and description of the goods shipped. Under a specific provision of the Uniform Bills of Lading Act, if a bill of lading has been issued by a carrier or on his behalf by an authorized agent or employee, proof of nonreceipt or misdescription of the goods will not avail the carrier as against the consignee named in a non-negotiable bill or the holder of a negotiable bill who has given value in good faith relying upon the description of the goods in the bill of lading. The carrier is liable to such a consignee or holder for damages caused by the nonreceipt by the carrier or a connecting carrier of all or part of the goods or their failure to correspond with the description in the bill at the time of its issue * * *."

II. *Did the District Court Err in Failing to Apply the Statute(s)?*

Although it was done in a rather indirect manner, the appellant in this case did introduce evidence that the amount of rice shown in the bill of lading had never been received by the carrier. In cross-examining Mr. Daniel J. Sied, the resident manager of Pacific Micronesian Lines who had been called on direct examination by appellee, counsel for appellant elicited testimony to the effect that although appellant's bill of lading showed 3000 sacks of rice, only 1675 sacks of rice had been received to the vessel, (R.T. pp. 14, 16.) At the same time there was received into evidence, without objection, defendant-appellant's exhibit B, the dock receipt of appellant's vessel, which showed that only 1675 sacks of rice had been received to the vessel. Thus, at this stage, appellant had introduced evidence to impeach the bill of lading as a receipt.

We have been cited to no Guam cases interpreting § 2128g of the Guam Civil Code, and our own research has revealed none. But other jurisdictions with the same Uniform Bills of Lading Act provision, and other cases interpreting 49 U.S.C. § 102, show that when a carrier impeaches its bill of lading as a receipt, the consignee or holder of the bill of lading must show that he paid value after relying on the representations of the bill of lading in order to be able to hold the carrier. The California case of Bedig v. Southern Pacific Co., 84 Cal.App. 325, 335, 258 P. 148, 153 (1927) held that

"Primarily, a bill of lading is in the nature of a receipt for goods on the part of the carrier, and is presumptive evidence, only, of the ownership thereof. As between the parties it is impeachable for mistake, error, or false statements contained therein."

The New York case of Plata American Trading, Inc. v. Lancashire, 29 Misc.2d 246, 214 N.Y.S.2d 43 (1957), in interpreting 49 U.S.C. § 102, held that where a buyer did not rely on a statement as to quantity in the bill of lading, he could not hold the carrier liable for nondelivery of the amount listed in the bill of lading. To the same effect is Strohmeyer & Arpe Co. v. American Line S.S. Corp., 97 F.2d 360, 362 (2d Cir. 1938),

where it was stated that reliance on the representations of the bill of lading and the giving of value on the basis of that reliance was the only way in which one could benefit from 49 U.S.C. § 102:

"Congress did not mean to \* \* \* change the well settled rule that as against a shipper or anyone who has not advanced value on the faith of the bill of lading, the carrier is entitled to parol evidence to show that the goods were never received. This has long been the rule of the federal courts. \* \* \*

\*　\*　\*　\*　\*　\*

"The statute was intended to protect one who in reliance on the recitals of the bill of lading had acquired the same or the property represented thereby for value or who had otherwise altered his position to his detriment by reason thereof."

In this case neither reliance by Truk Trading Company on the representations contained in the bill of lading, nor the payment of value by Truk Trading Company for the amount of goods shown in the bill of lading was proved at trial. Appellant asserted throughout the trial that 49 U.S.C. § 102 and Guam Civil Code § 2128g were applicable and insisted that appellee had the burden of showing that Truk Trading Company had parted with value for the missing rice, and had done so in reliance on the representations contained in the bill of lading. (R.T. pp. 17, 18, 19, 20, 32, 33, 49, 50, 62, 63.) Appellee began by assuring the court that it was prepared to prove such reliance and payment. (R.T. pp. 17, 20, 30.) But in fact such proof was never made. And, although it was not dealt with by the parties, we have read the entire record to determine whether Truk Trading Company might have relied upon the dock receipt rather than the bill of lading. We have discovered no evidence whatever to show such reliance, or even to indicate that Truk Trading Company ever saw the dock receipt before, during, or after the time it received the goods from appellant's vessel.

The reason that no attempt was made to show reliance by Truk Trading Company on the bill of lading or payment by Truk Trading for the rice appears to have been the district court's conclusion that such proof was unnecessary on the basis of testimony that Truk Trading Company had dealt with J & G Warehouse Market on an "open account" basis. (R.T. p. 28.) While conceding that records of the open account should have been introduced to determine whether or not Truk Trading Company had had to pay for the rice which it did not receive (R.T. pp. 29, 30), the district court nevertheless accepted the testimony of the J & G Warehouse Market wholesale manager that the transaction was carried out on an "open account" basis as conclusive on the issue of payment by Truk Trading Company, and on the issue of reliance as well. It is clear that the district court assumed that the existence of an open account meant that Truk Trading Company must have been required to pay for the full amount of the goods shown on the bill of lading. (R.T. pp. 32, 33, 49–50.) We cannot agree that this conclusion was correct without proof to substantiate it.

Black's Law Dictionary (4th Ed., 1951) defines "open account" in the following terms:

"An account which has not been finally settled or closed, but is still running or open to future adjustment or liquidation. Open account, in legal as well as in ordinary language, *means an indebtedness subject to future adjustment, and which may be reduced or modified by proof.* James v. Lederer-Strauss & Co., 32 Wyo. 377, 233 P. 137, 139. (Emphasis added.)

"An open account can become an account stated only by the debtor's admission of liability, or failure to deny liabilty for a reasonable time after receipt of account. Brooks v. White, 187 N.C. 656, 122 S.E. 561."

We do not believe that these definitions of "open account" are consistent with the view that the amount indicated on the bill of lading "must" have been

paid for. It would appear, from these definitions at least, that the possibility remains of adjusting the account, should it be found that the amount billed has not been delivered.

A further objection to dispensing with proof of reliance and parting with value because of the use of an "open account" is that it overlooks the requirement that the consignee or holder of the bill of lading must have parted with value *in reliance on the bill of lading.* The district court's decision seems to rest more on the view that Truk Trading Company would have to pay because of its reliance on the claim of J & G Warehouse Market as to the amount which J & G Warehouse Market had shipped rather than from reliance on the terms of the bill of lading.

█ The district court erred in failing to require appellee to prove that its assignor or subrogor had parted with value in reliance on the representations of the bill of lading.

The decision of the district court is *reversed* and the matter *remanded* for further proceedings consistent with this opinion.