## THE GWALIA'S CARGO.[1]

*(District Court, D. Massachusetts.* March 3, 1886.)

CARRIERS OF GOODS BY VESSEL—DAMAGE TO CARGO WHILE UNLOADING—LEAKAGE OF BALLAST TANKS.

The cargo of a vessel was damaged during its discharge by water leaking from the ballast tanks into the hold. The tanks had been filled in order to steady the vessel. They had become strained during the passage, which was one of unusual severity. This circumstance was not known to the officers of the vessel, and there was a lack of proper care in filling them. The consignee, in consequence of the damage, refused to pay full freight. The carrier attached the cargo, claiming exemption from liability for damage caused by "perils of the sea." *Held,* that as the damage arose from negligence, it was unnecessary to consider the exemption claimed; that the circumstances demanded, on the part of the carrier, extreme care; and that as little or no care had been used, the damage sustained by the cargo should be deducted from the freight money

In Admiralty.
*B. L. M. Tower,* for libelants.
*Frederick Dodge,* for claimants.

NELSON, J. This was a libel for freight against a cargo of sugar in hogsheads, brought to Boston from Cardenas and Caibarien, in Cuba, in the steam-ship Gwalia. The Gwalia was an English vessel, built of iron. She was constructed with water-tight bulk-heads, and with water ballast tanks extending the whole length of the ship fore and aft, except under the engine-room. The tops of the tanks were iron plates riveted to the sides of the ship. Resting on the

[1] Reported by Theodore M. Etting, Esq., of the Philadelphia bar.

plates was a plank flooring, which formed the bottom of the lower hold. At the sides of the tanks were water-ways leading from forward and aft to a well below the engine-room. In the water-ways at the bulk-heads were sluices so arranged that they could be opened and closed from the engine room. The tanks were filled from the sea through an opening in the side of the ship, under the engine-room, and from this opening intermediate pipes led to the separate tanks, and the tanks could be filled altogether or separately. The ship arrived in Boston on April 7, 1884. The whole cargo consisted of 1698 hogsheads. On the evening of the 8th, 1606 hogsheads had been landed in good condition. The remaining 92 hogsheads formed the ground tier in the after-hold. The ship being lightened by the discharge of cargo, it became necessary to run up the ballast tanks to keep her steady, and prevent her from listing in the dock. The sea-cock was accordingly turned on, and the water was allowed to run into all the tanks simultaneously during the night. The next morning it was found that the tanks had filled, and that the water had leaked through the tops of two of them into the after-hold. The sluices in the water-ways at the bulk-heads having been kept shut, the water had accumulated in the hold, and risen above the dunnage, and flooded the sugar.

It was ascertained on subsequent examination that some of the rivets in the water-ways had become loosened, and the water had leaked into the hold through the rivet holes and seams. The tanks were sound at the commencement of the voyage, but had been strained in a storm of unusual severity which the ship had encountered off Cape Hatteras. The leak was unknown to the officers of the ship when the water was let into the tanks at Boston. The consignees paid all the freight money except $1,975.67, and for this amount the owners of the Gwalia libeled the cargo. The consignees, who appeared as claimants, claimed a deduction of $1,005.97, that being the amount of the damage to the cargo by the water. Both the charter-party and the bills of lading contained the usual exception exempting the ship from liability for damage arising from the perils of the sea. The claim of the owners was that the damage was caused by a peril of the sea, within the exceptions. Whether this would be the case if the ship had been free from fault, I have not found it necessary to consider. I think it is clear, upon the admitted facts, that those in charge of her were guilty of negligence. Their negligence consisted in allowing the water to run all night into the ballast tanks with the sluices at the bulk-heads closed. Had the sluices been open, the water would have run off into the well below the engine-room, and done no injury, or, at least, the presence of the leak would have been disclosed. As I understand the construction of the ship, as described in the depositions in the case, the water-ways and sluices were for the express purpose of draining off any water which might leak into the holds from the tanks when filled, and preventing just such acci-

dents as this. One excuse offered for the omission was that it was not usual on the Gwalia to open the sluices when the tanks were being filled. This, certainly, was not a justification, as it showed an habitual failure to use the means and appliances furnished by the ship to prevent damage to cargo by water. Another excuse is that the ship lay by the stern, and the water would not have run off if the sluices had been open. I doubt if this was so, in point of fact; but if it was, the difficulty could easily have been remedied by filling the forward tanks first.

The evidence showed that the weak point of vessels of this class was in the tops of the ballast tanks. In heavy weather, especially when supporting cargo, these are likely to become strained, thus starting the rivets and opening the seams between the iron plates. After the severe gale experienced during the voyage, it was the plain duty of the master to use extreme care in filling the tanks; and as he used no care at all, I must hold the ship responsible for his negligence. I am of opinion that the claimants are entitled to have deducted from the freight the damage to the cargo.

Decree for the libelants for $969.70, with interest from the filing of the libel, without costs.