## MUNSON S. S. LINE v. ROSENTHAL.
## ROSENTHAL v. MUNSON S. S. LINE.

District Court, S. D. New York.
Dec. 29, 1933.

Irving L. Evans and Kirlin, Campbell, Hickox, Keating & McGrann, all of New York City (L. De Grove Potter and William H. Postner, both of New York City, of counsel), for Munson S. S. Line.

Ben Rosenthal, of Brooklyn, N. Y., and Harry S. Thirkield, of New York City (Gregory S. Rivkins, of New York City, of counsel), for Sam Rosenthal.

PATTERSON, District Judge.

The Munson Line brought suit against Rosenthal to recover $1,028.85, representing freight and charges on a shipment of tomatoes carried on the steamship Pan America from Nassau to New York and delivered here to Rosenthal. The latter filed a cross-libel against the Munson Line for $8,500, alleged to be the damage to the tomatoes caused by the carrier's negligence in transit.

The tomatoes, packed in 2,372 crates, were shipped by one Slater in Nassau and were carried on a straight bill of lading consigned to Rosenthal. Rosenthal is a commission merchant in New York who sells produce for the account of those who send it to him. He had made pre-harvesting advances to the growers of the tomatoes, the amount of such advances not being stated. There is undisputed proof that the tomatoes were not in uniformly good condition on

receipt by the carrier on January 20, 1929. Some were over-ripe; others had green rot; the greater part, however, were merchantable. The carrier's agents discussed their condition with the shipper, who conceded that the tomatoes were not up to standard. The bill of lading recited that they were "in apparent good order and condition." It contained, however, the additional notation in typewriting in a conspicuous place on the face of the bill, "Not Responsible For Condition On Arrival." The Pan America arrived in New York on January 24, 1929, the tomatoes being then in substantially the same state as at the time of shipment. The defectives ranged from 2 per cent. in some crates to 16 per cent. in others. There was no damage to them on the voyage. They were delivered to Rosenthal in lots commencing on the 24th and ending on the 28th. He received the bill of lading on the 24th and paid the customs duty, $474.40, before he received the tomatoes. He refused to pay the freight. On being sued for the freight, he filed a cross-libel for damages to the goods alleged to have come about because of the carrier's negligence.

1. The right of the carrier to recover the freight cannot reasonably be questioned. It surrendered the goods and waived its lien in consideration of the implied promise of the consignee to pay the freight. A consignee who receives goods under a bill of lading which incorporates the charter provisions is personally responsible for the freight. Union Pacific R. Co. v. American Smelting & Refining Co. (C. C. A.) 202 F. 720; Vane v. A. M. Wood & Co., Inc. (D. C.) 231 F. 353; Yone Suzuki v. Central Argentine R. Co. (C. C. A.) 27 F.(2d) 795. It is no defense that the goods were damaged through the carrier's fault, although any such damage may be offset against the claim for freight by recoupment or cross-libel. The Gwalia's Cargo (D. C.) 26 F. 919; Relyea v. New Haven Rolling Mill Co. (D. C.) 75 F. 420.

2. The other question is whether the consignee is entitled to damages from the carrier because of the damaged condition of the goods at destination. The consignee was a commission merchant. He had no title to the goods in question; he had, however, a lien or special property in them by reason of the advances he had already made to the owner. This is a sufficient interest to enable him to bring suit for damage alleged to have been sustained by the goods in transit. Grove v. Brien, 8 How. 429, 12 L. Ed. 1142; Grinnell-Collins Co. v. Illinois Central R. Co., 109 Minn. 513, 124 N. W. 377, 26 L. R. A. (N. S.) 437. The issue is whether liability on the part of the carrier was made out.

No attempt was made to prove that the damaged condition on arrival was actually the result of lack of care by the carrier or that it occurred in the course of the voyage. As already pointed out, the uncontradicted proof is that the tomatoes were in poor shape when received by the carrier. The consignee insists, however, that because of the recital as to good condition in the bill of lading the carrier is estopped to show that the tomatoes were in poor condition on shipment. The rule is that a carrier who has given a clean bill of lading, stating that cargo has been received in good order when it was at the time manifestly damaged, is estopped to deny the truth of the assertion against a purchaser of the bill of lading who has been misled by the representation and has altered his position on the faith of the representation. Sears v. Wingate, 3 Allen (Mass.) 103; Compania Naviera Vasconzada v. Churchill & Sim, [1906] 1 K. B. 237; Higgins v. Anglo-Algerian S. S. Co. (C. C. A.) 248 F. 386; The Carso (C. C. A.) 53 F.(2d) 374. The rule is applicable to straight bills of lading as well as to order bills of lading.

There are two reasons, I think, why the rule does not fit the facts of this case. In the first place, the bill was not the usual clean bill of lading. True, it did carry the customary words, "in apparent good order and condition." But it also bore the bold legend, "Not responsible for condition on arrival." This was sufficient to put the consignee on notice as soon as he saw the bill of lading. In this feature the case is indistinguishable from Craig & Rose v. DeLargy, 16 Scottish Law Reports, 750, where the decision went in favor of the carrier.

In the second place, the consignee did not alter his position or act to his prejudice. He did not purchase or pay for the goods. He was simply the agent of the shipper, to whom he had made advances long prior to shipment. He asserts that he paid the duty on the tomatoes, $474.40, in reliance on the statement in the bill of lading that they were in good order and condition on shipment. But this payment was one made for the account of his principal, who was the culpable party so far as the condi-

tion of the shipment was concerned and who certainly has no grievance against the carrier. Moreover, the consignee's statement that he would not have paid this relatively small sum but for the statement in the bill of lading cannot be credited when the circumstances of the case are taken into consideration. For one thing, he had an interest in the tomatoes because of the money he had advanced on them before they were harvested, and he obviously wanted them in order to sell them and reimburse himself for his advance. It is plain that in their damaged condition they were worth far more than $474.40, for less than 16 per cent. was defective and the consignee claimed damages in this case in the sum of $8,500. It is also to be noted that after he had learned of the actual condition of the tomatoes he accepted delivery and thereby took on an additional liability for freight to the extent of $1,028.85. The only rational conclusion is that he was not led to pay the duty by anything that he saw in the bill of lading. No act of prejudice beyond the payment of duty is claimed.

The carrier therefore was not estopped to prove that the goods were in a damaged state at the time of shipment. The proof being uncontradicted that the tomatoes were delivered at destination by the carrier in substantially the same condition as they had been on receipt by the carrier, the consignee is not entitled to damages from the carrier.

The carrier will have the relief demanded in its libel for freight. The consignee's libel for damages to the cargo will be dismissed.