CONDOR INDUSTRIES
INTERNATIONAL,
INC., Plaintiff,

v.

M.V. "AMERICAN EXPRESS", her engines, boilers, tackle, etc., Interlink Systems, Incorporated, and Ariel Maritime Group, Inc., Defendants.

No. 86 Civ. 6045 (PKL).

United States District Court,
S.D. New York.

July 20, 1987.

notice of appeal. *Cf. Fearon v. Henderson,* 756

Hill, Rivkins, Carey, Loesberg, O'Brien & Mulroy, New York City (George F. Chandler III, of counsel), for plaintiff.

Badiak & Will, New York City (Roman Badiak, of counsel), for defendants.

## OPINION & ORDER

LEISURE, District Judge:

Plaintiff, Condor Industries International, Inc., sues to recover for damage to a shipment of machinery transported from Felixtowe, England to Miami, Florida aboard the M.V. American Express. Plaintiff moves for partial summary judgment striking defendants' seventh defense. Defendants cross-move for partial summary judgment, contending that they are entitled to prevail on their seventh defense as a matter of law.

F.2d 267, 267 (2d Cir.1985).

## Factual Backround

The subject cargo, two "CNC lathes," was manufactured by Manta Machinery Sales Limited, an English corporation ("Manta"), and sold to plaintiff, a Florida corporation. Manta's sales invoice to plaintiff is dated July 11, 1985. The invoice describes the terms of payment as "Nett [sic] cash by T.T. on receipt of invoice." The invoice also describes the transaction as "C.I.F. Miami."

The lathes were initially transported to a warehouse in Birmingham, England owned by Ariel Maritime Group, Inc., a defendant herein ("Ariel"), by W.H. Barley (Transport & Storage) Ltd, an English corporation. Both the trucker's receipt and Ariel's warehouse receipt, dated July 29, 1985, describe the apparent condition of the cargo as "1 CRATE DAMAGED."

On August 3, 1985, the cargo was loaded aboard the M.V. American Express at Felixstowe, England. Ariel was the general agent for Interlink Systems, Inc., a defendant herein and the carrier aboard the vessel ("Interlink"). Ariel issued a "clean" bill of lading describing the cargo, "2 CASES S.T. C.:—MACHINERY", as "RECEIVED in apparent good order and condition...." [1] The bill of lading lists Manta as the shipper and plaintiff as the consignee. Since the bill of lading does not contain the words "to bearer" or "to the order of," it is a non-negotiable bill of lading. *See* Uniform Commercial Code ("UCC") § 7–104.

The cargo arrived in Miami on August 15, 1985. A tally performed on behalf of Interlink on August 20, 1985, described the condition of the cargo as "1–DAMAGE AND—O'PEN." On September 4, 1986, before the goods were delivered to plaintiff, M.F.Z. Public Warehouse, Inc. issued a warehouse receipt that described the condition of the cargo as "2 CSES DAMAGED."

Condor informed Ariel of the damage on September 6, 1985, and, in a letter dated September 9, 1985, stated its intent to file a

claim. A surveyor's report estimated the total damage to be $15,241.80. On November 21, 1986, defendant made an offer of judgment, pursuant to Fed. R. Civ. P. 68, in the amount of $500 without admission of liability. Plaintiff filed its complaint on August 5, 1986.

The question at issue is whether the defendants can rely on the $500 per package limitation of liability prescribed by the Carriage of Goods by Sea Act (COGSA), 46 U.S.C. § 1304(5). Plaintiff contends that the bill of lading was false because it failed to state the actual condition of the cargo when loaded on board the vessel. Plaintiff argues, therefore, that defendants should be required to pay its full provable damages. Defendants respond that: 1) the rule of estoppel depriving a carrier of the COGSA limitation in a case of false representation applies only if the bill of lading is negotiable; and 2) plaintiff did not rely on the bill of lading issued by Ariel because it was not a required document under the terms of the sale by Manta.

## Discussion

■ "[W]hen a carrier misrepresents its own conduct in loading goods aboard ship it is responsible for the misrepresentation and may not invoke contract provisions incorporating COGSA's limitations on liability." *Berisford Metals Corp. v. S.S. Salvador,* 779 F.2d 841, 849 (2d Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 2928, 91 L.Ed.2d 556 (1986). In *Berisford Metals,* the Court of Appeals for the Second Circuit reaffirmed a line of cases beginning before and continuing after the 1936 enactment of COGSA. *See id.* at 845 (citing *Higgins v. Anglo-Algerian Steamship Co.,* 248 F. 386, 387–88 (2d Cir.1918)). Relying solely on the discussion in *Berisford Metals* of the important commercial role of negotiable, or order, bills of lading, defendants contend that the rule of that case does not apply to non-negotiable, or straight, bills of lading.

---

**1.** A bill of lading is "clean" when it lists no exceptions to the following statement printed on the bill: "RECEIVED in apparent good order and condition except as otherwise noted...." *See Kupfermann v. United States,* 227 F.2d 348, 349–50 (2d Cir.1955). *See also* G. Gilmore & C. Black, *The Law of Admiralty* 122–23 (2d ed. 1975) (hereinafter referred to as "Gilmore & Black").

The same contention was rejected in an early case, *The Carso*, 43 F.2d 736, 744 (S.D.N.Y.1930), *aff'd in pertinent part,* 53 F.2d 374 (2d Cir.1931). In *The Carso,* the defendant shipowner issued twenty bills of lading, seventeen of which were non-negotiable. 43 F.2d at 737. All of the bills stated that the goods were shipped "in apparent good order and condition," even though the shipowner knew that the cargo had been damaged before shipment. *Id.* at 737–38. The consignees paid for the goods in reliance on the clean bills of lading. *Id.* at 738. After a review of the line of cases which developed the rule upheld in *Berisford Metals,* the Court stated,

> It matters not, I think, that the bill of lading is not negotiable. For what difference can it make whether the steamship owner issues a document which it may reasonably expect will be acted on to his detriment by a particular man or by many men—by a man whose name it knows or by men whose names it knows not?

43 F.2d at 744. The Court added that "[t]he real question . . . is whether the consignee of a straight bill of lading . . . knows, when he pays his money . . . that the representation as to the condition of the goods by the shipowner is false." *Id.*

The same conclusion was reached in *Munson S.S. Line v. Rosenthal,* 6 F.Supp. 374 (S.D.N.Y.1933). In *Rosenthal,* the defendant carrier issued a straight bill of lading which recited that the cargo was in apparent good order and condition even though the carrier's agent had known that the goods "were not in uniformly good condition." *Id.* at 374–75. The Court explained that the doctrine of estoppel recognized in *The Carso* "is applicable to straight bills of lading as well as to order

bills of lading." *Id.* at 375. The Court declined application of the rule, however, on the ground that plaintiff had not detrimentally relied on the misrepresentation in the straight bill of lading. *Id.* at 375–76.[2]

■ Defendants' second contention is that *Berisford Metals* is inapplicable to this case because plaintiff did not rely on the bill of lading issued by Ariel. Defendants note that Manta's invoice called for plaintiff's payment in cash by telex transfer on receipt of the invoice. *See* Exh. B to Affidavit of Roman Badiak, Esq., sworn to on February 9, 1987. Defendants thus imply that Manta and plaintiff had agreed that the bill of lading was not a "required document" within the meaning of UCC § 2–320(4). That section provides:

> Under the term C.I.F. or C. & F. *unless otherwise agreed* the buyer must make payment against tender of the required documents and the seller may not tender nor the buyer demand delivery of the goods in substitution for the documents.

(emphasis added).[3] *See also* UCC § 2–320(2)(a) & (e). According to defendants, the only document necessary to the conclusion of the C.I.F. sale was Manta's invoice. Defendant's Memorandum of Law at 7. Plaintiff responds that "[h]ad the defendants properly claused the bill of lading . . . the transaction would not have taken place." Plaintiff's Reply Memorandum of Law at 9.

*Berisford Metals* establishes that plaintiff's reliance on the bill of lading is a precondition to application of the rule of estoppel. In that case, the terms of a contract of purchase entered into on June 23, 1983, were F.O.B. vessel at Santos, Brazil, for shipment to New York in January, 1984. 779 F.2d at 842.[4] Payment was

**2.** *The Carso, Rosenthal,* and other cases decided before the enactment of COGSA remain good law today. "[C]ourts in this circuit have long refused to hold that COGSA altered pre-COGSA law with respect to deviation and other conduct carrying the same consequences." *Berisford Metals,* 779 F.2d at 848 (citations omitted). *See, e.g., Elgie & Co. v. S.S. "S.A. Nederburg",* 599 F.2d 1177, 1181 (2d Cir.1979) (false representation in bill of lading that cargo was loaded on ship renders $500 per package limitation inap-

plicable), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980).

**3.** The parallel provision for F.O.B. sales is UCC § 2–319(4).

**4.** In both an F.O.B. place of shipment contract, as in *Berisford Metals,* and a C.I.F. contract, as here, the risk of loss passes to the buyer on shipment. *See* Official Comment to UCC § 2–320 at ¶ 16 (under "C.I.F." term, risk of loss

to be made 45 days after ocean bill of lading date against presentation of a "full set of shipping documents," which, in conjunction with the F.O.B. vessel term, was understood by the parties as requiring a clean on board bill of lading. *Id.* at 842–43. The carrier issued such a bill of lading on January 4, 1984. *Id.* at 843. The containers were discharged on January 20, 1984, and plaintiff advised defendant of the loss on January 27, 1984. *Id.* In the meantime, the seller presented to plaintiff, in accordance with the purchase contract, a full set of shipping documents, including three original on board bills of lading issued by the carrier, the seller's invoice, weight and analysis certificates, and a draft payable 45 days after the bill of lading date. *Id.* at 844. Since the papers were in order and complied with the parties' purchase contract, plaintiff accepted the draft and, on February 17, 1984, paid the full amount of the purchase price as well as the carrier's freight charges. *Id.* On its summary judgment motion in the ensuing litigation, plaintiff contended

> that it had paid the purchase price in reliance on [the carrier's] representation in its on board bill of lading that the 70 missing bundles had been loaded aboard its ship [and] that it was committed by its purchase contract to pay the purchase price upon the seller's presentation of the shipping documents...."

*Id.* The Court's acceptance of these assertions became the lynchpin of its holding. The Court explained that

> [t]he bill of lading, whether or not intentionally false, enabled the shipper to collect from [plaintiff], the buyer, the full purchase price for 100 bundles.... If the carrier had truthfully stated what it had loaded on the ship, [plaintiff] would not have been required to pay the pur-

chase price for the 70 bundles of unloaded ingots which it had contracted to purchase.

*Id.* at 848–49. *See also id.* at 845–46 (noting reliance, in cited case, on bill of lading and other shipping papers); *Rosenthal,* 6 F.Supp. at 375 (requiring that consignee "alter his position or act to his prejudice").

In the instant case, genuine issues for trial are presented by the questions of whether plaintiff was committed by its purchase contract to pay the purchase price upon Manta's presentation of the shipping documents, whether the bill of lading was included as a document required for such purpose, and whether plaintiff in fact relied on the misrepresentation in the bill of lading. *See, e.g., Seaver v. Lindsay Light Co.,* 233 N.Y. 273, 276, 135 N.E. 329 (1922) (unless contract is to contrary, seller completes C.I.F. sale when he delivers merchandise to shipper, pays freight, and forwards to buyer bill of lading, invoice, insurance policy and freight receipt); *National American Corp. v. Federal Republic of Nigeria,* 597 F.2d 314, 321 (2d Cir.1979) (same). *See also* Official Comment to UCC § 2–320 at ¶¶ 1, 10–12, 14; Gilmore & Black at 106–07. From the papers submitted in support of the cross-motions, it cannot be discerned, for example, when plaintiff in fact paid for the goods. Moreover, while plaintiff has asserted, in a wholly conclusory manner, that the transaction would not have occurred if defendants had issued a truthful bill of lading, the role that the bill of lading in fact played in the shipment and delivery of the cargo is unclear.[5]

In summary, the Court holds that the rule of estoppel against application of the $500 per package limitation of liability is potentially available in the case of an original consignee on a non-negotiable bill of

---

passes to buyer on shipment); UCC § 2–319(1)(a) (under "F.O.B. place of shipment" term, seller bears risk of putting goods into carrier's possession).

**5.** For example, counsel for plaintiff has explained that "[o]ne does not need the bills of lading to pick up cargo under a straight bill of lading, only identification as the consignee." Reply Affidavit of George F. Chandler III, Esq.,

sworn to on February 27, 1987, at ¶ 3. It is unclear, however, whether the facts in this case followed the ordinary course. *Compare Allied Chemical International Corp. v. Companhia de Navegacao,* 775 F.2d 476, 481–82 (2d Cir.1985), *cert. denied,* — U.S. —, 106 S.Ct. 1502, 89 L.Ed.2d 903 (1986). In this regard, it should be noted that no party has submitted an affidavit of an individual with personal knowledge of the transaction between Manta and plaintiff.

lading. In order to invoke the doctrine of estoppel, however, the consignee must demonstrate detrimental reliance on the misrepresentation in the straight bill of lading. Whether such reliance occurred in the instant case is a factual matter that cannot be determined at this juncture. Accordingly, the cross-motions for summary judgment are hereby denied.

SO ORDERED.