**DEI DOGI CALZATURE S.P.A., Plaintiff,**

v.

**SUMMA TRADING CORPORATION, Cast (1983) Ltd., M/V CAST CARIBOU, her engines, boilers, etc., Atlantic Conbulk Maritime Corporation, Atlantic Maritime Corporation, and John Doe Shipping Company, Inc., Defendants.**

**CAST (1983) LTD., and Atlantic Conbulk Maritime Corp., Third Party Plaintiffs,**

v.

**Andrea SARTI, Bruzzone Shipping, Inc., Garfield Transport, Inc. and Francois Robert, Third Party Defendants.**

No. 88 Civ. 5177 (RPP).

United States District Court, S.D. New York.

Feb. 8, 1990.

Reargument of, —— F.Supp. ——.

M.E. DeOrchis, DeOrchis & Partners, New York City, for plaintiff Dei Dogi Calzature, S.P.A.

Christopher H. Mansuy, Walker & Corsa, New York City, for defendant Cast.

Richard L. Furman, Hyman & Kaplan, Miami, Fla., and Andrew R. Spector, Hy-

man & Kaplan, New York City, for third party defendant Bruzzone Shipping.

Joseph J. Perrone, McDonald Herbermann & Fenzel, New York City, for third party defendant Garfield Transp.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Plaintiff Dei Dogi Calzature S.P.A., an Italian importer, brings this suit to recover the losses it has suffered due to the receipt of a container holding 8,086 kilograms of water instead of the expected $433,607 worth of leather jackets and shoes. Defendant Cast (1983) Ltd. (Cast) is the owner and operator of the ship which transported the container containing the water. The role of Cast is limited to arranging for the transportation of the container from New Jersey to Montreal, loading the container at Montreal and then issuing an "on board" bill of lading. *See* Cast 3(g) at 2–4, ¶¶ 3, 8a.

On January 30, 1989, Cast moved for summary judgment pursuant to Federal Rule of Civil Procedure 56 and "for an Order vacating security arranged in favor of plaintiff pursuant to Rule E, Supplemental Rules for certain Admiralty and Maritime Claims."

On August 29, 1989, the Court placed the matter on the suspense calendar pursuant to Rule 20 of the Rules for the Division of Business Among District Judges. On September 14, 1989, Cast moved for reargument of its motion for summary judgment and the Court's decision to place the case on the suspense calendar. Then, by letter dated January 5, 1990, plaintiff informed the Court that its settlement negotiations with Cast had failed and that it "would also like to see the legal entanglements in which it has been cast ... resolved as soon as possible." In addition, plaintiff's letter urged the Court to decide the summary judgment motion in its favor, despite the absence of a formal cross-motion. Cast has responded to said letter and the Court will treat it as a cross-motion for summary judgment. *See Local 33 v. Mason*

*Tenders*, 291 F.2d 496, 505 (2d Cir.1961); 10A Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2720, at 29–35. The Court removes the case from the suspense calendar and addresses the outstanding motions submitted by Cast and plaintiff.

### Discussion

■ Cast argues that the Court should dismiss the complaint without even addressing the issue of liability, because plaintiff has not suffered any damages. A brief review of plaintiff's legal maneuvers is necessary to understand Cast's argument. Upon receipt of Cast's bill of lading, the Banca Popolare di Milano (the Bank) branch in New York deducted $433,607 from plaintiff's account and paid the shipper, Summa Trading Corp. (Summa), pursuant to the terms of a letter of credit. After the container of water arrived in Switzerland, plaintiff instituted two lawsuits: this action and a separate action in Italy against the Bank. The latter action alleged that the Bank had been negligent in honoring the bill of lading. According to plaintiff, "on September 4, 1989 the Italian Court issued something similar to a temporary restraining order against the bank[, preventing the Bank from continuing its deduction of the $433,607 from plaintiff's account]. However it is not known when the [Italian] Court will make a final determination." DeOrchis Aff. at ¶ 12, Ex. 9. Cast contends that this "Italian TRO" means that plaintiff has yet to sustain any damages and that the complaint must therefore be dismissed in its entirety.

The pending Italian suit does not cause plaintiff's claims to become unripe for adjudication. Cast does not dispute that the risk of loss passed to plaintiff when the bill of lading was issued and that the ownership of the missing cargo passed to plaintiff when its bank paid the shipper. The acts which plaintiff alleges render Cast liable for the loss of plaintiff's cargo are neither hypothetical nor abstract. Since the "allegedly injurious events," *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974), have already transpired, the issue of

liability presents a ripe case or controversy and the Court proceeds to rule on the merits of the motion. *See Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U.S. 59, 82, 98 S.Ct. 2620, 2635, 57 L.Ed.2d 595 (1978) (case is ripe because waiting would not "significantly advance our ability to deal with the legal issues presented nor aid us in their resolution").

■ Cast contends that this suit should be governed by the Canadian Carriage of Goods by Water Act rather than by the United States Carriage of Goods by Sea Act (COGSA), 46 U.S.C. App. § 1300, *et seq.* Nevertheless, Cast concedes, "This [Canadian] Act is in all material respects identical to the U.S. Carriage of Goods by Sea Act." *See* Cast Br. at 6 (Jan. 30, 1989). Indeed, Cast only cites U.S. COGSA cases in its papers despite its supposed reliance on Canadian law.

The Court applies United States law because the terms of United States COGSA dictate that that statute govern this bill of lading:

### BILLS OF LADING SUBJECT TO CHAPTER

Every bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States, in foreign trade, shall have effect subject to this chapter.

46 U.S.C. App. § 1300.[1] Although the actual voyage was from Montreal, Canada to New York, New York to Chiasso, Switzerland, the parties contracted for a voyage from New York to Switzerland. *See* Cast Ex. A, Pl.Ex. 2 at 2. Accordingly, the contract was for the carriage of goods by sea from a United States port and the Court applies United States COGSA law in this case.

■ COGSA provides that a bill of lading is prima facie evidence of the carrier's receipt of the goods described in the bill of lading. 46 U.S.C. App. § 1303(4). There is no dispute that water is all that arrived in Switzerland. Thus, plaintiff has made out a prima facie case against the carrier. Once a prima facie showing has been made, the burden usually shifts to the carrier to show either that the loss was not due to the carrier's negligence or that the carrier qualifies for one of the "excepted" clauses in 46 U.S.C. App. § 1304. Among the exceptions to carrier responsibility are 46 U.S.C. App. §§ 1304(2)(i) (loss arising from acts or omission of the shipper or his agent), 1304(2)(q) (cause arising without the actual fault and privity of the carrier) and 1304(5) ("in connection with the transportation of the goods if the nature or value thereof has been knowingly and fraudulently misstated by the shipper in the bill of lading"). Cast attempts to rebut plaintiff's prima facie case by pointing to the uncontested admissions of Andrea Sarti, the head of Summa, that he and his agents deceptively filled the container with water. Cast 3(g) at 3–4, ¶ 8.

Plaintiff responds that the "excepted" clauses do not apply in this case, because the allegations are "not based on theft of the [cargo] ... or on ... [the carrier's] negligence, but on the carrier's false representation that it loaded" the cargo specified in the bill of lading on to the ship. *See Berisford Metals Corp. v. S/S Salvador,* 779 F.2d 841, 848 (2d Cir.1985), cert. denied, 476 U.S. 1188, 106 S.Ct. 2928, 91 L.Ed.2d 556 (1986).

In *Berisford,* containers arrived at the port of destination containing nothing but air. Neither party disputed that the carrier lacked knowledge of and responsibility for the pilferage, which had taken place before loading while the containers were in

---

**1.** The U.S. COGSA further provides:
This Act shall apply to all contracts for carriage of goods by sea to or from ports of the United States in foreign trade.
\* \* \* \* \* \*
*Provided further,* That every bill of lading or similar document of title which is evidence of a contract for carriage of goods by sea from

ports of the United States, in foreign trade, shall contain a statement that it shall have effect subject to the provisions of this chapter.
46 U.S.C. App. § 1312. The Bill of Lading specified that "the provisions of the Hague Rules or applicable legislation shall be deemed incorporated herein." Cast Ex. C.

the custody of the Brazilian government. *Id.* at 844. The Second Circuit held, however, that the carrier was liable for the "full value of the lost cargo," *id.* at 847, and that the principles of exception had no applicability. *Id.* at 848–49. The basis for that ruling was the carrier's issuance of an "on board" bill of lading, which represents that the carrier loaded on to the ship the cargo described in the bill of lading. *Id.* at 848. When there is a material misstatement in an "on board" bill of lading the carrier must be held fully liable because the carrier has "misrepresented its own conduct in loading goods aboard ship." *Id.* at 849. The Second Circuit concluded that to protect the integrity of "on board" bills of lading, the carrier had to be held liable "[r]egardless [of] whether some third party stole the ... [cargo;] the carrier here was obligated to state truthfully what it had loaded." *Id. See also id.* at 847 (citing *Olivier Straw Goods Corporation v. Osaka Shosen Kaisha*, 47 F.2d 878 (2d Cir.), cert. denied, 283 U.S. 856, 51 S.Ct. 648, 75 L.Ed. 1462 (1931), for the proposition that "[w]hen a carrier ... makes a representation in a bill of lading with respect to *its own conduct* ... it is reasonably expected to be aware of *its own actions*, including whether or not it has loaded cargo" (emphasis in original)).

In this case, an "on board" bill of lading was issued by the carrier, in accordance with the instructions from the shipper. Cast Ex. A, C. Cast, however, contends that it cannot be held liable under *Berisford* as a matter of law and fact. According to Cast, all loses were "due to the fraud perpetrated by Mr. Sarti and his confederate" when they filled the tanks with water instead of coats and shoes. Cast Br. at 7 (Jan. 30, 1989). *Berisford* holds, however, that regardless of whether another party is responsible for the loss, "the carrier here was obligated to state truthfully what it had loaded." 779 F.2d at 848.

Cast further argues that the facts of this case are distinguishable from material aspects of *Berisford*. In *Condor Industries International, Inc. v. M.V. American Ex-press*, 667 F.Supp. 99, 101 (S.D.N.Y.1987), the district court explained that "reliance on the bill of lading" was a precondition to plaintiff's recovery in *Berisford*. In this case the Bank, on plaintiff's behalf, issued payment pursuant to a letter of credit when the bill of lading was presented. The Bank issued payment in response to the presentation of the bill of lading.[2] *See* Pl.Ex. 2. Accordingly, the reliance requirement of *Berisford* and *Condor* is satisfied.

In addition, Cast maintains that "the carrier's operational activities in loading the container was [the] most relevant" factor in *Berisford* and that the loading activities in this case are distinguishable. There is merit to Cast's contention that the liability of the carrier in *Berisford* stemmed in part from its failure to verify the container's weight upon loading. 779 F.2d at 848. *See also Insurance Company of North America v. M/V GLOBE NOVA*, 820 F.2d 546, 549 (2d Cir.), cert. denied, 484 U.S. 965, 108 S.Ct. 454, 98 L.Ed.2d 394 (1987). In *Berisford*, a simple weighing would have revealed that the container held air rather than cargo, while in this case it is not clear that weighing would have enabled the carrier to realize that it was making a misrepresentation when indicating that the containers held cargo rather than water. Therefore, Cast argues, it cannot be held liable for its failure to weigh the container.

However, Cast issued an "on board" bill of lading detailing not only the weight of the containers, but also the number of boxes, the number of pairs of shoes and the quantity of leather jackets. Cast Ex. C. The carrier is only required to furnish in writing "[e]ither the number of packages or pieces, or the quantity or weight, as the case may be." 46 U.S.C. App. § 1303(3)(b). *See also Atruscan (U.S.A.), Inc. v. Neptune Orient Lines, Ltd.*, 612 F.Supp. 578, 583 (S.D.N.Y.1985) (when carrier has no means of checking quantity, then it must refrain from listing quantity on bill of lading "or bear the consequences"). Even if the carrier is not liable for misrepresenting that it had loaded 6,082 kilograms of shoes

---

**2.** Whether the Bank's reliance was negligent is the subject of the Italian lawsuit.

and jackets, it is liable for misrepresenting the quantity of boxes, shoes and jackets.

Also of no avail to Cast is Section 1303(5)'s provision that "the shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity and weight, as furnished by him." 46 U.S.C. App. § 1303(5). That Section only provides the carrier with a right to indemnification by the shipper and "in no way limit[s] his [the carrier's] responsibility and liability under the contract of carriage to any person other than the shipper." *Id.*

Accordingly, the Court grants summary judgment to plaintiff on the issue of full liability for the value of the missing cargo. The damages issue is not reached, as the effect of the pending Italian lawsuit is not yet clear. Therefore the Court does not rule on the damages issue and this is only a grant of partial summary judgment against Cast. The Court also refrains from interfering with the private security agreement entered into by the parties and therefore denies Cast's Rule E motion to vacate the security arrangement. The parties are to attend a pretrial conference at 9:00 A.M. on February 21, 1990.

IT IS SO ORDERED.