**DEI DOGI CALZATURE S.P.A., Plaintiff,**

v.

**SUMMA TRADING CORPORATION, Cast (1983) Ltd., M/V Cast Caribou, her engines, boilers, etc., Atlantic Conbulk Maritime Corporation, Atlantic Maritime Corporation, and John Doe Shipping Company, Inc., Defendants.**

**CAST (1983) LTD., and Atlantic Conbulk Maritime Corp., Third Party Plaintiffs,**

v.

**Andrea SARTI, Bruzzone Shipping, Inc., Garfield Transport, Inc. and Francois Robert, Third Party Defendants.**

**No. 88 Civ. 5177 (RPP).**

United States District Court, S.D. New York.

April 19, 1990.

M.E. DeOrchis, DeOrchis & Partners, New York City, for plaintiff Dei Dogi Calzature, S.P.A.

Christopher H. Mansuy, Walker & Corsa, New York City, for defendant Cast.

Andrew R. Spector, Hyman & Kaplan, New York City, for third party defendant Bruzzone Shipping.

Joseph J. Perrone, McDonald Herbermann & Fenzel, New York City, for third party defendant Garfield Transp.

Andrea Sarti, Tallahassee, Fla., pro se.

## OPINION AND ORDER

ROBERT P. PATTERSON, Jr., District Judge.

Defendant Cast (1983) Ltd. (Cast) moves for reargument of *Dei Dogi Calzature v. Summa Trading Corp.*, 730 F.Supp. 567 (S.D.N.Y.1990), in which this Court denied Cast's motion for summary judgment and granted partial summary judgment to plaintiff, Dei Dogi Calzature S.P.A. The decision held that Cast, the carrier, was fully liable for the value of missing cargo purchased by the plaintiff, an Italian importer; however, the decision did not reach the issue of damages.

## Background

As related in detail in the earlier decision, plaintiff brought this action to recover the losses it suffered as the result of the receipt of a container holding water instead of the expected $433,607 worth of leather jackets and shoes.[1] Cast's role as carrier involved receiving the container in a loaded condition in New Jersey, trucking the container to Montreal, loading the container on board its ship in Montreal and then transporting the container to Antwerp, Belgium.

Cast premised its original motion for summary judgment on the Carriage of Goods by Sea Act (COGSA). On this motion, Cast changes the focus of its motion to argue that the Pomerene Act is dispositive. Since both parties have fully briefed the Pomerene Act issue on this motion, the Court proceeds to determine whether the original decision should be modified.[2]

## Discussion

The Pomerene Act applies to all "[b]ills of lading issued by a common carrier for the transportation of goods" from a place in the United States. 49 U.S.C.App. § 81[3]; *see Elgie & Co. v. S.S. 'S.A. Nederburg'*, 599 F.2d 1177, 1180 (2d Cir.1979), cert. denied, 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980). Cast received a sealed container, said to contain the goods, in New Jersey, and transported the goods to a ship in Montreal, which then sailed to Antwerp, Belgium. The Pomerene Act applies to the bill of lading issued by Cast because the transportation of the goods by the carrier originated in the United States. Neither

1. Familiarity with the factual background provided in the previous opinion is presumed.

2. The Pomerene Act is not an entirely new issue to this case, as it was discussed in passing in the last motion in plaintiff's memorandum in opposition and in Cast's reply memorandum.

3. Bills of lading issued by any common carrier for the transportation of goods in any Territory of the United States, or the District of Columbia, or from a place in a State to a place in a foreign country, or from a place in one State to a place in another State, or from a place in one State to a place in the same State through another State or foreign country, shall be governed by this chapter.

49 U.S.C.App. § 81.

party has objected to the applicability of the Pomerene Act. In fact both parties urge the Court to follow the Pomerene Act.

Cast relies on Section 21 of the Pomerene Act, 49 U.S.C. § 101.[4] "When package freight or bulk freight is loaded by a shipper," then Section 21 insulates a carrier from liability for any misrepresentation on the bill of lading preceded by the disclaimer "said to contain." 49 U.S.C. § 101. Here, Cast issued a bill of lading in which the description of the contents of the container was prefaced by "S.T.C.", which all parties agree indicates "Said To Contain." However, "S.T.C." only insulates Cast if the freight was "loaded by a shipper." 49 U.S.C.App. § 101.

Here, the shipper stuffed, sealed and locked the containers, while the carrier loaded the containers on to the truck and the ship. Plaintiff points out that in 1916, when Congress enacted the Pomerene Act, "loading" only referred to loading on board a ship, as opposed to stuffing a container. The practice of loading cargo into a container before loading the cargo on board did not arise until many years after the passage of both the Pomerene Act and COGSA. If "loading" is given a construction limited to loading cargo on board, then Section 21 will not protect the carrier because here the carrier loaded the cargo on board the ship. However, if "loading" includes stuffing, sealing and locking the container then Section 21 applies because it is undisputed that the shipper stuffed, sealed and locked the container before delivering it to the carrier.

■ The policy behind Section 21 is to enable the carrier to indicate, by use of the words "said to contain," that it is issuing a bill of lading based on the shipper's representations about acts undertaken by the shipper, of which the carrier has no first-hand knowledge. When a shipper stuffs, seals and locks the container, then the carrier has no way of verifying the quantity of goods inside. *Royal Typewriter Co. v. M/V Kulmerland*, 483 F.2d 645, 647 n. 4 (2nd Cir.1973).[5] A shipper's stuffing of a container and subsequent delivery of that container to the trucking agent of the carrier is sufficiently equivalent to a shipper's loading of cargo on board to fall within the term "loading." *See Chicago & N.W. Railway Co.*, 75 F.2d 398 (8th Cir.), cert. denied, 295 U.S. 738, 55 S.Ct. 650, 79 L.Ed. 1685 (1935) (dicta stating that if shipper loaded freight on to railroad cars, sealed the cars, and then delivered the cars to the carrier for transport, then Section 21's "loaded by shipper" condition would be satisfied). Accordingly, Section 21 applies here and dictates that the carrier is insulated from liability.

■ Plaintiff contends that Section 21 does not insulate a carrier from liability under Section 22 of the Pomerene Act, 49 U.S.C. § 102, for "misdescription of goods" in a bill of lading. This reading of the Pomerene Act would render Section 21 meaningless. Congress intended to have "said to contain" function as an adequate warning that the carrier had no direct knowledge of the contents of the loaded cargo. The point of Section 21 is that "said to contain" has the effect of eliminating the carrier's responsibility for the description in the bill of lading. Under the Pomerene Act, a description prefaced by "said to contain" cannot be a misdescription attrib-

4. When package freight or bulk freight is loaded by a shipper and the goods are described in a bill of lading merely by a statement of marks or labels upon them or upon packages containing them, or by a statement that the goods are said to be goods of a certain kind or quantity, or in a certain condition, or it is stated in the bill of lading that the packages are said to contain goods of a certain kind or quantity or in a certain condition ... such statements, if true, shall not make liable the carrier issuing the bill of lading, although the goods are not of the kind or quantity or in the condition they were said to be by the consignor. 49 U.S.C.App. § 101.

5. If the container was empty then a weight check would have been able to verify missing cargo. Here, Cast's weight check did not detect any problems because, as the agents for the shipper have admitted, the containers were filled with an amount of water equal in weight to that of the missing goods. Although the weight indicated on the bill of lading was not preceded by a disclaimer, plaintiff has failed to raise a genuine issue of fact as to the correctness of that weight. Although the weight of the container upon its arrival in Antwerp was slightly less, this was due to leakage and evaporation.

utable to the carrier. *See Josephy v. Panhandle & S.F. Railway,* 235 N.Y. 306, 139 N.E. 277 (1923).

The applicability of Section 21 of the Pomerene Act also renders inapplicable the *Berisford Metals* rule, relied upon by the Court in its prior decision. *See Dei Dogi,* 730 F.Supp. at 569–70. (citing *Berisford Metals Corp. v. S/S Salvador,* 779 F.2d 841 (2nd Cir.1985), cert. denied, 476 U.S. 1188, 106 S.Ct. 2928, 91 L.Ed.2d 556 (1986); *Olivier Straw Goods Corporation v. Osaka Shosen Kaisha,* 47 F.2d 878 (2nd Cir.), cert. denied, 283 U.S. 856, 51 S.Ct. 648, 75 L.Ed. 1462 (1931)). *Berisford Metals* is a COGSA case and in COGSA there is no provision equivalent to Section 21. The Second Circuit in *Berisford Metals* held the carrier liable because the carrier had not "truthfully stated [in the 'on board' bill of lading] what it had loaded on the ship."[6] 779 F.2d at 848–49. If the carrier has made no false representations in the "on board" bill of lading then *Berisford Metals* does not apply. Under Section 21 of the Pomerene Act, the "S.T.C." preface renders the bill of lading free of any misrepresentation by the carrier and therefore *Berisford Metals* does not control this decision.

### Conclusion

Since Section 21 of the Pomerene Act insulates Cast from liability and renders the COGSA not dispositive of the undisputed facts of this case, the Court changes its ruling of February 8, 1990 and grants Cast's motion for summary judgment and denies plaintiff summary judgment.

Counsel for the remaining parties[7] to this case are to attend the pretrial conference scheduled for Friday, April 20, 1990 at 9:00 A.M.

IT IS SO ORDERED.

---

[6]. The Pomerene Act did not govern in *Berisford Metals,* because the transportation of the goods originated in a foreign country. When there is an "S.T.C." clause, then there can be different results depending on whether the Pomerene Act governs the bill of lading or COGSA is exclusively dispositive of the issue of liability. *See Elgie*

---

& Co., supra; *Westway Coffee Corp. v. M.V. Netuno,* 528 F.Supp. 113, 117 n. 7 (S.D.N.Y. 1981), aff'd, 675 F.2d 30 (2nd Cir.1982).

[7]. Cast is also a third-party plaintiff in this suit. Since this decision releases Cast from liability, Cast's third-party complaint is dismissed.