730 F.2d 622
 1985 A.M.C. 1437
 INDUSTRIA NACIONAL DEL PAPEL, CA., Plaintiff-Appellee Cross-Appellant,
Sanca Steel Corporation, Intervening Plaintiff,
Fairwind Container, Counter Claimant-Appellant, Cross-Appellee,
v.
M/V "ALBERT F", In Rem, etc., Defendant,
Sanca Steel Corporation, et al., Counter Defendants.
 No. 82-5865.
 United States Court of Appeals,
Eleventh Circuit.
 April 20, 1984.
 
 Hayden & Milliken, Pa., John D. Kallen, William B. Milliken, Miami, Fla., for Fairwind Container.
 Robert J. Schaffer, Miami, Fla., for Industria Nacional Del Papel, CA.
 Appeals from the United States District Court for the Southern District of Florida.
 Before HILL and HATCHETT, Circuit Judges, and ALLGOOD*, District Judge.
 HATCHETT, Circuit Judge:
 
 
 1
 In this action, we must determine whether a vessel may be held liable in rem for non-delivery of its cargo described in a clean on board bill of lading. We affirm the district court which held the vessel liable in rem because it was estopped from impeaching the bill of lading.
 
 
 2
 On January 9, 1979, the appellee, Industria Nacional Del Papel (Induspapel), ordered 1,500 metric tons of soft wood kraft pulp from Sanca Steel Corporation (Sanca), costing $569,790. In February, 1979, the cargo was loaded aboard the appellant vessel, the M/V ALBERT F, in southern Florida, and the vessel sailed for the Dominican Republic. On the same date, Induspapel paid Sanca.
 
 
 3
 The M/V ALBERT F arrived in Port Haina, Dominican Republic, on February 19, 1979, without the cargo specified in the bill of lading. Instead, it outturned 505 bales of wastepaper. Induspapel received practically worthless cargo, and sued the vessel and its claimant owner, Fairwind Container Express (Fairwind) to recover the amount it paid.
 
 
 4
 Claiming to be acting on behalf of Induspapel, Sanca originally arrested the M/V "ALBERT F." Subsequently, the vessel was released upon Fairwind's posting of $344,500 as security, and Induspapel was substituted for Sanca as the proper plaintiff. The district court ruled for Induspapel holding that the vessel was estopped from impeaching the clean bill of lading, and therefore, was liable in rem for the non-delivery of the cargo specified in the bill of lading. The M/V ALBERT F contends the district court erred in holding that it was estopped from impeaching the bill of lading and in finding it liable in rem. Induspapel cross-appeals claiming that the district court erred in reducing Induspapel's prejudgment interest award and in denying it an increase in the amount of security posted by Fairwind.A. Estoppel
 
 
 5
 The Pomerene Act, 49 U.S.C.A. Sec. 81-124 (West 1951), applies to all "[b]ills of lading issued by any common carrier for the transportation of goods ... from a place in a State to a place in a foreign country ...." 49 U.S.C.A. Sec. 81. The Pomerene Act fails to define "carrier," but the Carriage of Goods By Sea Act (COGSA), 46 U.S.C.A. Sec. 1300-1315 (West 1975), defines "carrier" as, "the owner or the charterer who enters into a contract of carriage with a shipper." 46 U.S.C.A. Sec. 1301 (West 1975). "Since COGSA was enacted against the backdrop of the Pomerene Act," we will utilize COGSA's definition of "carrier" to determine whether the M/V ALBERT F is a "carrier" within the meaning of the Pomerene Act. Portland Fish Co. v. States Steamship Co., 510 F.2d 628, 631 (9th Cir.1974).
 
 
 6
 The Fifth Circuit has held that a vessel is a "carrier" as defined in section 1301 of COGSA where (a) the ship transported and discharged cargo; (b) the bill of lading was issued for the master; and (c) no contractual relationship existed absolving the ship and its owner from liability for the cargo. Compagnie De Navigation, Etc. v. Mondial United Corp., 316 F.2d 163, 172-73 (5th Cir.1963). These factual circumstances exist in this case, and the M/V ALBERT F is a "carrier" within the meaning of COGSA and the Pomerene Act. Since the vessel was a common carrier transporting cargo from the United States to a foreign country, the Pomerene Act applies to this case. 49 U.S.C.A. Sec. 81.
 
 
 7
 Section 22 of the Pomerene Act provides that a carrier issuing a bill of lading will be liable "[to] the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods, ... for damages caused by the nonreceipt by the carrier of all or part of the goods upon or prior to the date therein shown, or their failure to correspond to their description thereof in the bill at the time of its issue." 49 U.S.C.A. Sec. 102 (West 1951). This provision codified the estoppel principal which held "carriers liable to consignees and good faith assignees for value for misrepresentations in their bill of lading." Elgie & Co. v. S.S. "S.A. Nederburg," 599 F.2d 1177, 1179 (2d Cir.1979), cert. denied sub nom., South African Marine Corp., Ltd. v. Elgie and Co., 444 U.S. 1072, 100 S.Ct. 1016, 62 L.Ed.2d 753 (1980).
 
 
 8
 Title 49 U.S.C.A. Sec. 102 holds the carrier liable for goods receipted for by him but not actually received. Elgie, 599 F.2d at 1179; Strohmeyer & Arpe Co. v. American Line S.S. Corp., 97 F.2d 360, 362 (2d Cir.1938). The M/V ALBERT F received certain goods and issued a bill of lading describing 854 tons of soft wood kraft pulp, but the goods received did not conform to the goods described in the bill of lading.[1] The vessel, therefore, is liable for the non-delivery of the goods pursuant to 49 U.S.C.A. Sec. 102. See Elgie, 599 F.2d 1177.[2]
 
 
 9
 The M/V ALBERT F contends, however, that the exculpatory provision of the Pomerene Act, 49 U.S.C.A. Sec. 101 (West 1951), exempts it from liability.[3] The vessel claims that certain words contained in the bill of lading free them from liability.[4] The bill of lading declares that "particulars [are] furnished by shipper;" the bill also states
 
 
 10
 the shipper, consignee and owner of the goods and the holder of this bill of lading agree to be bound by all the stipulations, exceptions, and conditions stated herein whether written, printed, stamped, or incorporated on the front or reverse side hereof, as fully as if they were all signed by such shipper, consignee, owner, or holder.
 
 
 11
 These statements are insufficient to escape liability under 49 U.S.C.A. Sec. 101. The words "particulars furnished by shipper" fail to relieve the carrier of liability under COGSA, and therefore, they do not exempt the M/V ALBERT F from liability under the Pomerene Act. Spanish American Skin Co. v. M.S. Ferngulf, 143 F.Supp. 345, 349 (S.D.N.Y.1956), aff'd, 242 F.2d 551 (2d Cir.1957); George F. Pettinos, Inc. v. American Export Lines, Inc., 68 F.Supp. 759, 764 (E.D.Pa.1946), aff'd, 159 F.2d 247 (3d Cir.1947). Since COGSA and the Pomerene Act protect the holder in due course from misleading bills of lading, statements insufficient to avoid liability under COGSA should not be permitted to avoid liability under the Pomerene Act. Moreover, the words "particulars furnished by shipper" fail to indicate that the shipper loaded the cargo, because COGSA presumes the shipper will furnish the particulars placed in the bill of lading by the carrier. 46 U.S.C.A. Sec. 1303(3) (West 1975).
 
 
 12
 The preprinted paragraph in the bill of lading also fails to satisfy the standard in 49 U.S.C.A. Sec. 101. The paragraph does not indicate that the shipper loaded the cargo, and therefore, such an attempted disclaimer of liability is ineffective. See Spanish American Skin Co., 242 F.2d at 552-53.
 
 
 13
 B. The District Court's Holding the M/V "ALBERT V" Liable In Rem
 
 
 14
 A court obtains in rem jurisdiction over a vessel when a maritime lien attaches to the vessel. Krauss Brothers Lumber Co. v. Dimon SS Corp., 290 U.S. 117, 120-21, 54 S.Ct. 105, 106, 78 L.Ed. 216 (1933). A maritime lien attaches against a ship when a valid claim for cargo loss or damage exists. G. Gilmore & C. Black, The Law of Admiralty, Sec. 3-45 at 165 (1st ed. 1957). The right to the lien attaches "when there is 'union of ship and cargo.' " Krauss, 290 U.S. at 121, 54 S.Ct. at 106. When the vessel is loaded, or at least when it is ready to be loaded, the "union of ship and cargo" will occur. Krauss, 290 U.S. at 121-22, 54 S.Ct. at 106. The loading of the cargo on the M/V ALBERT F therefore created a maritime lien enforceable in rem to secure the performance of the contract.
 
 
 15
 The vessel contends, however, that Sanca delivered the wrong goods, and therefore, no maritime lien attached. The district court concluded that the maritime lien attached because appellants were estopped from asserting the delivery of the wrong goods. Since we have affirmed the district court's ruling with respect to the estoppel issue, we also affirm the ruling holding the M/V ALBERT F liable in rem. The vessel could not deny the delivery of goods because they were estopped from doing so, and therefore, they must be treated as having the correct goods on board. Therefore, the lien attached when the goods were loaded on the ship, and the district court was correct in holding the M/V ALBERT F liable in rem.
 
 
 16
 C. The District Court's Denying an Increase in Security and
 
 In Limiting Induspapel's Final Judgment
 
 17
 The M/V ALBERT F was released in exchange for Fairwind's posting of a $344,500 security. The effect of the release was to transfer the lien from the ship to the fund the security represented. "The lien against the ship [was] discharged for all purposes and the ship cannot again be liable in rem for the same claim." G. Gilmore & C. Black, The Law of Admiralty, Sec. 989 at 651 (1st ed. 1957). See also, Continental Grain Co. v. Federal Barge Lines, Inc., 268 F.2d 240, 244 (5th Cir.1959), aff'd, 364 U.S. 19, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960). Induspapel contends that the district court erred in not compelling Fairwind to post additional security because the security had become inadequate as a result of the party's mistaken belief of the anticipated duration of the litigation.
 
 
 18
 Rule E(6) of the Supplemental Rules to the Federal Rules of Civil Procedure provides that, "[t]he court may, on motion and hearing, for good cause shown, reduce the amount of security given; and if the surety shall be or become insufficient, new or additional sureties may be required on motion and hearing." This provision fails to give clear guidance to the district courts on when to require additional sureties, but, "it seems reasonably clear that if the vessel is released on too low a bond as the result of fraud, misrepresentation or mistakes sufficient to justify the [vessel's] rearrest, the court can compel additional security to be posted as a precondition to avoiding a rearrest." 7A Moore's Federal Practice, Sec. E.14 at E-710 (2d ed. 1983). "A mistake sufficient to justify rearrest requires that it be tinged with fraud or misrepresentation or that it be the mistake of the court and not that of the claimant." 7A Moore's Federal Practice, Sec. E.14 at E-711 n. 30 (2d ed. 1983).
 
 
 19
 In this case, the mistake was not tinged with fraud or misrepresentation and was not caused by the district court. The mistake concerned the parties' opinions concerning the duration of the litigation, and while their opinions were incorrect, this mistake is insufficient to compel additional security. Indeed, at the time Induspapel intervened in this case, its claim exceeded the amount of the security that had been posted. Induspapel should have addressed the inadequacy of the security when it first intervened in the suit.
 
 
 20
 The district court also limited Induspapel's lien to $344,500, the amount of the security Fairwind posted. Induspapel contends that the district court erred in limiting the lien to this amount. Since no fraud or illegalities existed sufficient to justify rearrest, the question is whether Induspapel can obtain an in personam judgment in excess of the amount of the security against Fairwind who secured the vessel's release. "The traditional rule has been that the admiralty court will not give a personal judgment against the owner in excess of the amount of the release bond." G. Gilmore & C. Black, The Law of Admiralty, Sec. 9-90 at 652 (1st ed. 1957). This rule, however, appears to be changing. In The Fairisle, 76 F.Supp. 27 (D.Md.1947), aff'd sub nom., Waterman S.S. Corp. v. Dean, 171 F.2d 408 (4th Cir.1948), the district court granted judgment for $45,000 after the ship had been released on a $25,000 bond. The district court held that the award in excess of the bond was proper because the bond was not determined in relation to the value of the vessel, and the parties had not agreed to the value of the bond. Id. at 32. Utilizing its equitable powers, the district court granted an award in excess of the bond. Id. at 34. See also, The Minnetonka, 146 F. 509 (2d Cir.1906), cert. denied sub nom., Atlantic Transport Co. v. Barnes, 203 U.S. 589, 27 S.Ct. 777, 51 L.Ed. 330 (1906) (ship released for $5,000, the purported value of jewelry stolen on the ship. Subsequently, jewelry was determined to be worth more, and the second circuit awarded the plaintiff the full value of the jewelry).
 
 
 21
 The present case does not involve any mistake in determinations concerning the value of the ship. Both parties agreed to the initial estimation. Therefore, we find the district court acted properly in prohibiting an award in excess of the $344,500 security. See Logue Stevedoring Corp. v. The Dalzellance, 198 F.2d 369, 372-73 (2d Cir.1952) (adhering to the traditional rule that an in rem action could not be converted to an in personam action). See also, G. Gilmore & C. Black, The Law of Admiralty, Sec. 9-90 at 654 (1st ed. 1957).
 
 
 22
 The judgment of the district court is affirmed.
 
 
 23
 AFFIRMED.
 
 
 
 *
 Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation
 
 
 [1]
 While Straum actually issued the bill of lading, we conclude that Straum was acting on behalf of the vessel, and therefore, we treat the ship as issuing the bill of lading
 
 
 [2]
 A holder in due course cannot recover from a carrier under 49 U.S.C.A. Sec. 102 (1951), unless he has relied on the bill of lading. See Pacific Micronesian Lines, Inc. v. New Zealand Insurance Co., 366 F.2d 333, 335-36 (9th Cir.1966), aff'd, 397 F.2d 236 (9th Cir.1968). Induspapel relied on the bill of lading. Only after receiving the bill of lading did it pay Sanca. See also, T.J. Stevenson & Co., Inc. v. 81,193 Bags of Flour, 629 F.2d 338, 373-374 (5th Cir.1980)
 
 
 [3]
 Title 49 U.S.C.A. Sec. 101 states in pertinent part:
 The carrier may also by inserting in the bill of lading the words 'Shippers weight, load, and count,' or other words of like purport, [to] indicate that the goods were loaded by the shipper and their description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading ....
 
 
 [4]
 While the words "shippers weight, load, and count" are absent from the bill of lading, the statute provides for the inclusion of "other words of like purport" to avoid liability for the non-receipt of goods. 49 U.S.C.A. Sec. 101 (1951)