**YANG MING MARINE TRANSPORT CORPORATION, Plaintiff,**

v.

**OCEANBRIDGE SHIPPING INTERNATIONAL, INC.; Laufer Freight Lines, Ltd.; Okamoto Freighters, Ltd., Defendants.**

Laufer Freight Lines, Ltd., Cross–Claimant,

v.

Oceanbridge Shipping International, Inc.; Okamoto Freighters, Ltd., Cross–Defendants.

Laufer Freight Lines, Ltd., Third–Party Plaintiff,

v.

American International Cargo Service, Inc., Third–Party Defendant.

Oceanbridge Shipping International, Inc., Third Party Plaintiff,

v.

G.E. International (U.S.A.), Inc.; Phillip Morris, Inc.; British American Tobacco, Third Party Defendants.

American International Cargo Service, Cargo Service, Inc., a corporation, Cross-claimant,

v.

Oceanbridge Shipping International, Inc., a corporation; G.E. International (U.S.A.), Inc., a business entity; and Philip Morris, Inc., a corporation, Cross-defendants.

No. CV 97–8550 DT (SHx).

United States District Court, C.D. California.

Feb. 8, 1999.

---

See also F.Supp 99–112687.

Alan Nakazawa, Mitchell F. Ducey, Cogswell Woolley Nakazawa & Russell, Long Beach, CA, for Yang Ming Marine Transport Corporation.

Thomas J. Ryu, Kevin S. Kim, Marc D. Goldberg, Kim & Ryu, Los Angeles, CA, for Oceanbridge Shipping International, Inc.

Frank X. Dipolito, Jeffrey B. Carra, Swain & Dipolito, Fidelity Federal Plaza, Long Beach, CA, for Laufer Freight Lines Ltd.

Michael W. Lodwick, George P. Hasspais, Porter, Groff & Lodwick, A Law Corporation, Long Beach, CA, for American International Cargo Service, Inc.

ORDER **DENYING** PLAINTIFF YANG MING MARINE TRANSPORT CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT.

ORDER **GRANTING** THIRD–PARTY DEFENDANT AMERICAN INTERNATIONAL CARGO, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST THIRD–PARTY PLAINTIFF LAUFER FREIGHT LINES, LTD.

ORDER **GRANTING** THIRD–PARTY DEFENDANT AMERICAN INTERNATIONAL CARGO, INC.'S MOTION FOR SUMMARY JUDGMENT AGAINST PLAINTIFF YANG MING MARINE TRANSPORT CORPORATION.

TEVRIZIAN, District Judge.

## Background

### 1. *Factual Summary.*

This case involves an underlying complaint filed by Plaintiff Yang Ming Marine Transport Corporation ("Yang Ming") against Defendants Oceanbridge Shipping International, Inc. ("Oceanbridge"), Laufer Freight Lines, Ltd. ("Laufer"), and Okamoto Freighters, Ltd. ("Okamoto")[1] in connection with the alleged misdescription of eighteen containerloads of goods shipped from Long Beach, California to Tokyo, Japan in July of 1997. The containers were shipped in two groups—Oceanbridge booked shipment of eight containers with Yang Ming, as carrier, and Laufer booked shipment of ten containers with Yang Ming, as carrier. All eighteen containers were said to contain cigarettes and cigars; however, upon arrival in Tokyo, all eighteen containers contained spare, used tires. This case arises under the Carriage of Goods by Sea Act, 46 U.S.C. § 1300 *et seq.* ("COGSA"), and includes claims of breach of contract, negligence, fraud, negligent misrepresentation, and declaratory relief.

**The following facts are undisputed:**

G.E. International (U.S.A.), Inc. ("G.E."), agent for Phillip Morris Inc. ("Phillip Morris"), contracted with Oceanbridge to arrange for the shipment of eighteen containers of cigars and cigarettes to Tokyo, Japan.

### 1. *The Eight Oceanbridge Containers*

On or about May 14, 1997, Oceanbridge booked a shipment of eight containers of cargo with Yang Ming for carriage from Long Beach to Hong Kong on the vessel, the BROOKLYN BRIDGE (the "Ocean-

---

1. Okamoto was dismissed by order of This Court entered on October 19, 1998 on the grounds of lack of personal jurisdiction.

bridge Containers [2]"). The delivery destination of the eight Oceanbridge Containers was changed to Tokyo. Oceanbridge provided the particulars for the shipment of the eight containers to Yang Ming. Based on Oceanbridge's information, Yang Ming made a booking for Oceanbridge under the designated Booking No. KCGCK9353, which stated that the shipment consisted of eight forty-foot containers of the commodity "mixed grocery", said by Oceanbridge to be 555 cigarettes. *See* Declaration of Margaret Wang, Exhibit A. Oceanbridge provided Yang Ming with a Bill of Lading Master identifying Oceanbridge as exporter and Yang Ming as carrier, and describing, in part:

```
6880 Cases Said To Contain: 96320 KGS 465.050 CCM
 212347 LBS 16423 CFT
8 x 40' Footers
6880 Cases of Mixed Grocery (State Express 5 5 5)
680 Cases Per Contaienr [sic] 12,040 KGS Per Container
```

*See* Decl. of Wang, Exhibit B.

Yang Ming issued a Bill of Lading No. YMLU135019515 to evidence the contract of carriage for the eight Oceanbridge Containers being shipped by Oceanbridge on board the BROOKLYN BRIDGE, based upon the particulars furnished by Oceanbridge (the "Yang Ming/Oceanbridge Bill of Lading"). The Yang Ming/Oceanbridge Bill of Lading identifies Oceanbridge as shipper, Okamoto as the consignee and notifying party, and provides, in part:

```
8 x 40' Shipper's Load & Count. 212347 LBS 96320 KGS
 STC 3: 6880 CASES 16423.000 CFT 465.050 CBM
Of Mixed Grocery (State Express 555)
555 Cigarettes Filter King 84MM
Hard Park (5 Milles)
```

*See* Decl. of Wang, Exhibit H.

On or about June 9, 1997, the eight, sealed Oceanbridge Containers were received on board the BROOKLYN BRIDGE from or on behalf of Oceanbridge. The eight Oceanbridge Containers were sealed, stuffed and loaded else-

where before they were received on board the BROOKLYN BRIDGE by Yang Ming. Yang Ming did not participate in the loading of the cargo into the eight Oceanbridge Containers.

### 2. *The Ten Laufer Containers*

American International Cargo, Inc. ("American") is a non-vessel-operating carrier ("NVOCC [4]"), located in Long Beach, California, which is in the business of providing ocean transportation of goods and merchandise between U.S. and foreign ports.

Oceanbridge, also a NVOCC, contracted with American to provide transportation from Long Beach, California to Tokyo, Japan for a shipment of ten containers said to contain 9600 cases of Marlboro cigarettes. Relying on Oceanbridge's representations about the cargo in the ten containers, American contracted with Laufer, also a NVOCC, to provide transportation of the ten containers from Long Beach to Tokyo.

American issued an ocean bill of lading to Oceanbridge identifying Oceanbridge as the exporter/shipper and Okamoto as the consignee, and listing the following "particulars furnished by shipper":

```
10 x 40' S.T.C. 296298 LBS 22916CFT
 9600 Cases Cigarettes 16653 KGS 648.912 CB
 Shipper's Load and Count
```

(the "American/Oceanbridge Bill of Lading"). *See* Declaration of T. Kozlowski, Exhibit B. American claims that it did not see the cargo inside the containers and never had the containers in its possession. *Id.* at ¶ 10.

Laufer issued a booking report referencing American as shipper/supplier. Decl. of Hamre, Exhibit A. Laufer issued a bill of lading to American identifying American as exporter, Okamoto as consignee, and

---

**2.** The eight Oceanbridge Containers were container nos. YMLU4260487, YMLU4296070, INBU4822376, YMLU4390533, YMLU4391015, YMLU4404350, YMLU4445220, and YMLU4503753.

**3.** Hereinafter, "STC" means "said to contain"

**4.** A NVOCC is a "common carrier that does not operate the vessels by which the ocean transportation is provided, and is a shipper in its relationship with an ocean common carrier." *All Pacific Trading Inc. v. Vessel M/V HANJIN YOSU*, 7 F.3d 1427, 1430 (9th Cir. 1993) (citing 46 U.S.C.App. § 1702(17)).

listing ten containers of "1x40' Cigarettes & Cigars" (the "American/Laufer Bill of Lading"). *See* Decl. of Kozlowski, Exhibit A.

Finally, on or about June 16, 1997, Laufer booked a shipment of ten containers of cargo with Yang Ming for carriage from Long Beach to Tokyo on the vessel, the SETO BRIDGE (the "Laufer Containers [5] "). Yang Ming made a booking for Laufer under the designated Booking No. KEGTL6471, which stated that the shipment consisted of ten forty-foot containers of the commodity "food stuff." *See* Declaration of Margaret Wang, Exhibit D [6]. Yang Ming received a request from Laufer to change the commodity classification from "food stuff" to "department store merchandise." *See* Decl. of Wang, Exhibit E. Oceanbridge provided Yang Ming with a Bill of Lading Master identifying Laufer as exporter and Yang Ming as carrier, and identifying the contents of the 10 containers as "STC of cigars & cigarettes." *See* Decl. of Wang, Exhibit F.

Yang Ming issued a Bill of Lading No. YMLU135020768 to evidence the contract of carriage for the ten Laufer Containers being shipped by Laufer on board the SETO BRIDGE, based upon the particulars furnished by Laufer (the "Yang Ming/Laufer Bill of Lading"). The Yang Ming/Laufer Bill of Lading identifies Laufer as shipper, Okamoto as consignee and notifying party, and provides, in part:

10 x 40' Shipper's Load & Count. 296300 LBS 134400 KGS
 STC: 9600CARTONS 22915.770 CFT 648.900 CBM
Of Cigars & Cigarettes

*See* Decl. of Wang, Exhibit I.

On or about June 23, 1997, the ten, sealed Laufer Containers were received, at Long Beach, on board the SETO BRIDGE from or on behalf of Laufer. The ten Laufer Containers were sealed, stuffed and loaded elsewhere before they were received on board the SETO BRIDGE by Yang Ming. Yang Ming did not participate in the loading of the cargo into the ten Laufer Containers.

### 3. *Relevant Facts as to both the Oceanbridge Containers and the Laufer Containers*

On July 5, 1997, the eight Oceanbridge Containers [7] and the ten Laufer Containers arrived in Tokyo.

According to Yang Ming, the trucker for the actual consignee for both shipments, T.S. Shipping Company ("T.S.Shipping") picked up four of the ten, sealed Laufer Containers from Tokyo Customs Ohi Container Yard, and transported them to T.S. Shipping's designated bonded warehouse where it was discovered that the containers actually contained spare, used tires instead of cigars and cigarettes.

According to Yang Ming, Japanese Customs approved T.S. Shipping's request to return the four containers, temporarily resealed, from T.S. Shipping's warehouse to Yang Ming's Tokyo container yard. Yang Ming alleges that Japanese Customs further informed Yang Ming that the remaining six containers of the Laufer Containers and all eight Oceanbridge Containers also contained tires. Okamoto, the named consignee, and T.S. Shipping, the actual consignee, allegedly rejected the entire shipment and abandoned all eighteen con-

---

**5.** The ten Laufer Containers were container nos. YMLU4466433 YMLU4488279, YMLU4514212, GSTU9365860, INBU4906970, YMLU4229961, YMLU4266142, YMLU4397501, and YMLU4455110.

**6.** Laufer objects to Exhibit D on FRE 401 relevance grounds because the booking note names Unipac as the shipper, and not Laufer. Laufer further objects to this document as inadmissible hearsay under FRE 802, and improperly authenticated under FRE 901(a).

This Court overrules this objection. Exhibit D qualifies as a business record of Solar International Agency Inc., general agent for Yang Ming, and is properly authenticated by Margaret Wang in her capacity as Export Traffic Manager for Solar.

**7.** The Oceanbridge Containers first arrived in Hong Kong on board the BROOKLYN BRIDGE, and were subsequently shipped from Hong Kong to Tokyo on board the M/V MING SOUTH, Voyage No. 719E.

tainers at Yang Ming's Tokyo Ohi Container Yard.

Yang Ming alleges that it unsuccessfully attempted to dispose of the tires in Tokyo. On or about September 1, 1997, Yang Ming shipped nine of the Laufer Containers to Hong Kong on board the M/V NEWPORT BRIDGE, and one of the Laufer Containers and all eight of the Oceanbridge Containers to Hong Kong on board the M/V MING PLENTY. Decl. of Sato, Exhibit F. In disposing of the spare tires in the eight Oceanbridge Containers, Yang Ming claims to have incurred charges [8] totaling $44,401.23. In disposing of the spare tires in the ten Laufer Containers, Yang Ming claims to have incurred charges totaling $67,348.35.

## 2. *Procedural History.*

On November 20, 1997, Yang Ming filed a Complaint for (1) Breach of Contract, (2) Violation of COGSA (3) Negligence, (4) Fraud, (5) Negligent Misrepresentation, and (6) Declaratory Relief against Oceanbridge, Laufer and Okamoto (the "Complaint") with United States District Court Judge Dickran Tevrizian.

On January 5, 1998, Laufer filed an Answer to Complaint and Cross–Claim against Oceanbridge and Okamoto for (1) Breach of Contract and Indemnity against Okamoto and (2) Equitable Indemnity Against Oceanbridge and Okamoto.

On January 5, 1998, Laufer filed a Third–Party Complaint pursuant to Federal Rule of Civil Procedure 14(c) against American International Cargo Service, Inc. for Indemnification (the "Laufer Third Party Complaint").

On January 8, 1998, Oceanbridge filed a Third Party Complaint against G.E. International (U.S.A.), Inc. for (1) Indemnity and Contribution and (2) Declaratory Relief. On February 18, 1998, Oceanbridge

filed a First Amended Third Party Complaint adding Phillip Morris, Inc. and British American Tobacco as Defendants (the "Oceanbridge Third Party Complaint").

On February 24, 1998, American International filed a Cross–Claim against Oceanbridge, G.E. International and Phillip Morris for (1) Intentional Misrepresentation, (2) Negligent Misrepresentation, (3) Indemnification, (4) Contribution, and (5) Declaratory Relief (the "American International Cross–Claim").

On April 7, 1998, this action was reassigned to United States District Court Judge Margaret M. Morrow. On April 9, 1998 Judge Morrow entered an order of self-recusal on the grounds that Judge Morrow owns stock in Cross–Defendant and Third Party Defendant Phillip Morris, Inc. On April 16, 1998, this action was retransferred from the docket of Judge Morrow back to the docket of Judge Tevrizian.

On September 8, 1998, Defendant Okamoto filed a Motion to Dismiss Plaintiff Yang Ming's Complaint for Lack of Personal Jurisdiction, which was granted by this Court on October 19, 1998.

On January 15, 1999, pursuant to stipulation by the parties, this Court entered an order dismissing without prejudice Third Party Defendant Phillip Morris from the Oceanbridge Third Party Complaint.

On January 15, 1999, Plaintiff Yang Ming filed a Motion for Partial Summary Judgment as to Yang Ming's first claim for relief for breach of contract and second claim for relief for violation of the COGSA alleged in Yang Ming's Complaint against remaining Defendants Oceanbridge and Laufer.

On January 19, 1999, American International filed a Motion for Summary Judgment Against Yang Ming Marine Transport Corporation. On the same date, American International also filed a Motion

---

**8.** As to both the Oceanbridge Containers and the Laufer Containers, Yang Ming claims to have incurred (1) demurring charges while the containers remained in Tokyo, (2) shifting charges in Tokyo, (3) customs clearance charges in Tokyo, (4) ocean freight charges from Tokyo to Hong Kong, and (5) terminal handling charges in Hong Kong.

for Summary Judgment Against Laufer Freight Lines, Ltd. Yang Ming's Motion and American's two Motions are all before this Court today.

On January 22, 1999, this Court entered a Notice of Dismissal Without Prejudice of Cross–Defendant Phillip Morris, Inc. from the American International Cross–Claim.

## Discussion

### 1. Standard.

#### A. Motion for Summary Judgment.

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56. The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the moving party satisfies the burden, the party opposing the motion must set forth specific facts showing that there remains a genuine issue for trial. *See id.;* Fed.R.Civ.P. 56(e).

A non-moving party who bears the burden of proof at trial to an element essential to its case must make a showing sufficient to establish a genuine dispute of fact with respect to the existence of that element of the case or be subject to summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Such an issue of fact is a genuine issue if it reasonably can be resolved in favor of either party. *See Anderson*, 477 U.S. at 250–51, 106 S.Ct. 2505. The non-movant's burden to demonstrate a genuine issue of material fact increases when the factual context renders her claim implausible. *See Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Thus, mere disagreement or the bald assertion that a genuine issue of material fact exists, no longer precludes the use of summary judgment. *See Harper v. Wallingford*, 877 F.2d 728 (9th Cir.1989); *California Architectural Building Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987), *cert. denied*, 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988).

On a motion for summary judgment, admissible declarations or affidavits must be based on personal knowledge, must set forth facts that would be admissible evidence at trial, and must show that the declarant or affiant is competent to testify as to the facts at issue. Fed.R.Civ.P. 56(e). Declarations on "information and belief" are inappropriate to demonstrate a genuine issue of fact. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).

### 2. Analysis.

#### A. The Pending Motions for Summary Judgment

The primary determination before this Court today is whether Yang Ming is entitled to indemnification as carrier under both the Yang Ming/Oceanbridge Bill of Lading and the Yang Ming/Laufer Bill of Lading (collectively "Bills of Lading"). In the event that this Court affirmatively finds for Yang Ming in this regard, then the remaining questions before this Court posit which parties, if any, must indemnify Yang Ming.

Based on the Complaint, Yang Ming seeks partial summary judgment as against Defendants Oceanbridge and Laufer for indemnity. Yang Ming claims that, as an innocent carrier, it is entitled to recover indemnity from both shipper Defendants for the costs incurred in disposing of the spare tires found in the rejected Oceanbridge Containers and the rejected Laufer Containers upon their arrival in Tokyo.

Based on the Laufer Third–Party Complaint, American seeks summary judgment as against Laufer, contending that, in the

event that Laufer must indemnify Yang Ming for its damages, American is not required to indemnify Laufer for such damages. In so far as Laufer impled American into Yang Ming's Complaint, American also seeks summary judgment as against Yang Ming on the grounds that the Complaint fails to state a claim against American.

The issues before this Court today require the interpretation of the bills of lading between Laufer, American and Yang Ming. Under COGSA, bills of lading are contracts for foreign carriage and are interpreted in accordance with contract principles. 46 U.S.C.App. § 1301; *Amoco Overseas Co. v. ST Avenger*, 387 F.Supp. 589, 594. As such, this Court will discuss, in turn, the rights and obligations of the parties under each bill of lading.

### B. *Both COGSA and the Underlying Bills of Lading Control in the Instant Case.*

As a threshold issue, this Court first addresses the applicable law which must be applied to the pending Motions for Summary Judgment.

 COGSA governs the rights and liabilities of shippers and carriers for the carriage of goods by sea either to or from the United States in foreign trade. *See* 46 U.S.C.App. § 1300. COGSA applies "from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C.App. § 1301(e). The primary objective of COGSA is to "prevent the impairment of value and negotiability of the ocean bill of lading," and it typically results in greater carrier liability. *Portland Fish Co. v. States Steamship Co.*, 510 F.2d 628, 631–32 (9th Cir.1974).

 COGSA directly applies to contracts of carriage governed by bills of lading, and also "may be incorporated into a carriage contract even where it would not otherwise govern." *Institute of London Underwriters v. Sea–Land Service, Inc.*,

881 F.2d 761, 764 (9th Cir.1989). Moreover, this Circuit has stated that where a bill of lading incorporates COGSA, but also includes valid contract terms not in harmony with COGSA, "COGSA has the effect of a contractual term only, and inconsistent terms [in the underlying contract] may therefore be given force." *Id.* at 763; *North River Ins. Co. v.. Fed Sea/Fed Pac Line*, 647 F.2d 985, 987 (9th Cir.1981).

In the present case, it is undisputed that the eighteen containers of goods referenced in both the Yang Ming/Oceanbridge Bill of Lading and the Yang Ming/Laufer Bill of Lading were shipped from Long Beach, California to Tokyo, Japan. Therefore, COGSA applies to these shipments. Moreover, the Bills of Lading [9] state that

> As far as this Bill of Lading covers the carriage of Goods by water either by the Carrier, or any underlying Carrier, the contract evidenced in this bill of lading shall have effect subject to ... the Carriage of Goods by Sea Act of the United States ..., which act shall be deemed incorporated here in and made a part of this Bill of Lading Contract and nothing herein contained shall be deemed a surrender by the Carrier of any of its rights and immunities or any increase of any of its responsibilities or liabilities under said Act. The provisions cited in said Act shall (except as may be otherwise specifically provided herein) also govern before the Goods are loaded on and after there [sic] are discharged from the Ship provided, however, that the Goods at said times are in actual custody of the Carrier.

Decl. of Wang, Exhibits H and I. Thus, both COGSA and, to the extent that an inconsistency arises, the Bills of Lading control in the present case.

### C. *Yang Ming Is Not Entitled to Summary Judgment for Indemnity Against Oceanbridge or Laufer.*

Yang Ming seeks recovery by way of indemnity from Defendants Oceanbridge

---

**9.** Hereinafter, cited Provisions from the Bills of Lading will refer to both the Yang Ming/Oceanbridge Bill of Lading and the Yang Ming/Laufer Bill of Lading, unless otherwise indicated by this Court.

and Laufer on the grounds that they misdescribed the goods contained in the eighteen containers at issue, subjecting Yang Ming to damages and expenses as a result of Tokyo Customs' rejection of the containers upon their arrival in Tokyo. While this Court finds that Yang Ming has prevailed on part of its requisite indemnity showing, Yang Ming has insufficiently demonstrated an absence of genuine fact with regard to the reasonableness of its damages and expenses to merit summary judgment for indemnity at this time.

In order to recover for indemnity on its Motion for Partial Summary Judgment, Yang Ming must demonstrate that (1) Oceanbridge and Laufer, respectively, breached their warranty as to the accuracy of the particulars; (2) Oceanbridge and Laufer, respectively, have no defenses against Yang Ming's claim for indemnity; and (3) Yang Ming's claimed damages are reasonable under the circumstances. *Atlantic Overseas Corp. v. Feder*, 452 F.Supp. 347, 351 (S.D.N.Y.1978)[10].

1. **Yang Ming has satisfied the first two elements of the indemnity test, breach of warranty and the lack of defenses.**

Yang Ming first contends that Oceanbridge and Laufer have breached their warranties as to the accuracy of the description of the contents of the containers shipped under the Bills of Lading pursuant to COGSA. Section 3(5) of COGSA provides in pertinent part that:

[t]he shipper shall be deemed to have guaranteed to the carrier the accuracy at the time of shipment of the marks, number, quantity, and weight, as furnished by him; and the shipper shall indemnify the carrier against all loss, damages, and expenses arising or resulting from inaccuracies in such particulars....

46 U.S.C.App. § 1303(5).

As the parties agree, § 1303(5) has been relied upon by courts as a basis for permitting the carrier to prevail on indemnity claims against the shipper for inaccuracies as to cargo weight and quantities. *See e.g., Atlantic Overseas Corp. v. Feder*, 452 F.Supp. 347 (S.D.N.Y.1978), *aff'd*, 594 F.2d 851 (2nd Cir.1978) (actual weight of the cargo was substantially more than weight set forth in bill of lading). Laufer argues that 1303(5) cannot be extended, however, to permit carrier indemnification on the grounds of inaccuracies of the description of the cargo itself. While the case authority on § 1303(5) does not address this precise issue, this Court opines that such a narrow interpretation of § 1305 would frustrate the purpose of COGSA to "reduce uncertainty concerning responsibilities, rights and liabilities of carriers, shippers and underwriters." *Fednav Ltd. v. Sterling International*, 572 F.Supp. 1268, 1270 (N.D.Cal.1983). While Laufer is correct in its assertion that COGSA did not directly apply in *Fednav* because the shipment at issue went from Canada to Iraq, the court noted that COGSA was enacted to ensure the United States and Canadian Parliament were working in unison. *Fednav* cited *Sunkist Growers Inc. v. Adelaide Shipping Lines, Ltd.*, 603 F.2d 1327 (9th Cir.1979), wherein the Ninth Circuit explained that "the American Congress and the Canadian Parliament were working in unison" with regard to S 1303 because "the Canadian water Carriage of Goods Act was enacted in 1936, the same year that COGSA was enacted by the American Congress." *Id.* at 1337. Therefore, the *Fednav* court concluded that federal admiralty law generally recognizes a right to indemnity that "encompasses a faultless carrier's right to indemnity for losses suffered due to the shipper's misdescription of goods on the bill of lading." *Fednav*, 572 F.Supp. at 1271. This Court concludes that any other interpretation would frustrate COGSA's

10. This Court notes that while *Atlantic Overseas'* indemnity showing is not binding on this court, this Court is persuaded to follow the test applied therein as no court in this circuit has posited a different standard.

**1042**

intention of a faultless carrier's right to indemnity.

Yang Ming's second and alternative contention is that it is entitled to indemnity under the terms of the Bills of Lading themselves. Section 7, entitled "Merchants Responsibility," of the Bills of Lading provides that

> Any reference on the fact hereof to marks, numbers, *description, quality,* quantity, gauge, weight, measure, nature, kind, value and any other particulars of the Goods is as furnished by the Merchant [11], and the *Carrier shall not be responsible for the accuracy thereof.* The Merchant warrants to the Carrier that the particulars furnished by him are correct and shall indemnify the Carrier against all loss, damage, expenses, liability, penalties and fines arising or resulting from inaccuracy thereof.

Decl. of Wang, Exhibits H and I [emphasis added].

Notwithstanding the COGSA discussion above, the inaccuracy at issue in the present case is directly contemplated in Section 7 of the Bills of Lading—an inaccuracy as to description of the goods. The Yang Ming/Oceanbridge Bill of Lading referenced eight containers said to contain "Mixed Grocery (State Express 555) 555 Cigarettes Filter King 84MM." Decl. of Wang, Exhibit H. The Yang Ming/Laufer Bill of Lading referenced ten containers said to contain "9600 CARTONS Of Cigars & Cigarettes." Upon arrival in Tokyo, it is undisputed that the none of the eighteen containers contained cigars or cigarettes.

### a. *Oceanbridge's Defenses Fail*

■ Oceanbridge argues that is not a "Merchant" under the Yang Ming/Oceanbridge Bill of Lading, and is not a "ship-per" as contemplated under COGSA. Oceanbridge basis this argument on the fact that as between itself and G.E., the original contracting parties of the shipments at issue, G.E. is listed as "shipper" and Oceanbridge is the "forwarding agent" on the Bill of Lading Master provided by Oceanbridge. Decl. of Wang, Exhibit C. While this may be true as between Oceanbridge and G.E., the indemnity claim at issue here arises out of the Yang Ming/Oceanbridge Bill of Lading. Oceanbridge offers no authority, nor has this Court found any such authority, for the proposition that an earlier bill of lading overrides the existence of a subsequent bill of lading. To the contrary, the Ninth Circuit in *All Pacific Trading* held that where an NVOCC is involved the "NVOCC receives an entirely separate bill of lading from the actual carrier, on which the owner of the cargo may or may not be named." *All Pacific Trading, Inc. v. Vessel M/V/ HANJIN YOSU,* 7 F.3d 1427, 1430 (9th Cir.1993). The court recognized that each bill of lading is a *separate* contract in and of itself. In *All Pacific Trading,* the plaintiff cargo owner was not named on the NVOCC/carrier bill of lading, and had to separately qualify as a "Merchant" thereunder in order to recover against the carrier. Similarly, as between Yang Ming and Oceanbridge, the Yang Ming/Oceanbridge Bill of Lading names "Oceanbridge Shipping Int'l Inc." as the "shipper." Decl. of Wang, Exhibit H. Moreover, despite its status as a forwarding agent or NVOCC, the statute is clear that a NVOCC is a "shipper in its relationship with the ocean common carrier." 46 U.S.C.App. § 1702(17) [12]. Therefore, this Court is convinced that Oceanbridge is the shipper under the Yang Ming/Oceanbridge Bill of Lading, and, as such, falls within the definition of "Mer-

---

**11.** Section 1(4) of the Bills of Lading define "Merchant" as "the shipper, the consignee, the holder of the bill of lading, the receiver and/or the owner of the goods and any either owning or being entitled to the possession of the goods."

**12.** A NVOCC *can* be considered a carrier in its relationship with the shipper of the goods. *All Pacific Trading, Inc. v. Vessel M/V HANJIN YOSU,* 7 F.3d 1427, 1430 (9th Cir.1993). However, that link in the transportation chain (as between G.E. and Oceanbridge) is not before this Court today.

chant," as defined in footnote 10 herein. Any finding today that Oceanbridge could escape its responsibility as shipper as stated on the face of the Yang Ming/Oceanbridge Bill of Lading would undermine the reasoning of the Ninth Circuit.

Oceanbridge also argues that a genuine issue of fact exists as to the true contents of the containers because the Declaration provided by Satoshi Sato in support of Yang Ming's Motion was not based upon personal knowledge as is required on a motion for summary judgment. Notwithstanding this argument, which is discussed more fully below, the fact remains that it is undisputed that the eight Oceanbridge containers *did not* contain "555 cigarettes filter king 84MM hard pack (5 milles)" as stated in the Yang Ming/Oceanbridge Bill of Lading.

▅▅▅ Finally, Oceanbridge argues that a genuine issue of fact remains as to whether an actual contract exists between Oceanbridge and Yang Ming. Oceanbridge suggests that because both Yang Ming and Oceanbridge were under the "innocent belief" that the goods being transported were cigarettes at the time the Yang Ming/Oceanbridge Bill of Lading contract was entered into, the contract formation defense of mutual mistake exists. This Court finds this argument unavailing. Yang Ming argues, and this Court agrees, that this notion runs afoul to the provisions of COGSA. Oceanbridge points to no case authority for the applicability of mutual mistake in the context of carrier indemnity under COGSA, nor has this Court found any such authority. This court is of the opinion that permitting a shipper to escape liability on the grounds of mutual mistake belies the general federal admiralty right to an innocent carrier's indemnity for losses suffered from the shipper's mistake. Further, a mutual mistake renders a contract voidable at a party's option, such that the party may rescind or modify the contract. *See United States v. Fowler*, 913 F.2d 1382, 1389 (9th Cir.1990); Rest.2d Contracts, § 7. Here, the Yang Ming/Oceanbridge Bill of Lading contract has been completed and performed—the goods have been transported. Thus, the contract itself is no longer voidable.

In light of the foregoing, this Court finds that, pursuant to COGSA and Section 7 of the Yang Ming/Oceanbridge Bill of Lading, Oceanbridge, as shipper, warranted the particulars of the eight Oceanbridge Containers, including the description of their contents. In so far as none of the eight Oceanbridge Containers actually contained cigars or cigarettes, Oceanbridge breached its warranty to Yang Ming by providing Yang Ming with an inaccurate description of the goods transported in the eight Oceanbridge Containers. As such, Yang Ming has satisfied the first two elements of the *Atlantic Overseas* test as against Oceanbridge.

### b. *Laufer's Defenses Fail*

Laufer also argues that did not breach its warranty as to the accuracy of the contents of the Laufer Containers because it is not a "Merchant" under the Yang Ming/Laufer Bill of Lading. This Court disagrees. As with Oceanbridge, the face of the Yang Ming/Laufer Bill of Lading, identifies "Laufer Freight Lines, Ltd." as shipper. Declaration of Eric Hamre, Exhibit D. In his declaration provided to this Court in support of Laufer's oppositions, Eric Hamre admits that "between Laufer and Yang Ming, Laufer was the shipper and Yang Ming the carrier." Decl. of Hamre, p. 11: 26–28. In addition, the Ninth Circuit has stated that "Merchant" is to be defined broadly because "the bills of lading attempt to create a broad range of parties from whom the carrier can seek payment for the shipment." *All Pacific Trading v. Vessel M/V HANJIN YOSU*, 7 F.3d 1427, 1432 (9th Cir.1993). This Court concludes that, as between Yang Ming and Laufer, Laufer is the shipper. As this Court noted above, in so far as Laufer is an NVOCC and may be considered a "carrier" in relation to its contract with the original shipper, it is considered a shipper

for purposes of its relationship with Yang Ming.

Laufer also argues that it did not pack the Laufer Containers, and that it relied upon a master bill of lading sent by Oceanbridge, which was restated on the face of the Yang Ming/Laufer Bill of Lading, which provided that the containers were "STC" or "Said to Contain" cigars and cigarettes. Laufer relies on *Dei Dogi Calzature S.P.A. v. Summa Trading Corp.*, 733 F.Supp. 773 (S.D.N.Y.1990), in support of its proposition that the language "said to contain" in the Yang Ming/Laufer Bill of Lading insulates Laufer from any liability as to Yang Ming. However, its reliance on *Dei Dogi* is misplaced.

 In cases where COGSA controls, the Pomerene Act may also apply. *Portland Fish*, 510 F.2d at 631–32. "The Pomerene Act applies to all '[b]ills of lading issued by a common carrier for the transportation of goods' *from* a place in the United States." 49 U.S.C. § 80102; *Dei Dogi Calzature S.P.A. v. Summa*, 733 F.Supp. 773 (S.D.N.Y.1990) [emphasis added]. Because the two shipments at issue in the instant case originated in Long Beach, California, the Pomerene Act clearly applies.

Under § 80113 of the Pomerene Act, "when the goods are loaded by the shipper," *and* when the bill of lading is qualified by the disclaimer "said to contain" or "shipper's weight, load, and count," a carrier is not liable for any misdescription of the goods contained in the bill of lading. 49 U.S.C. § 80113. A shipper's stuffing, sealing and locking of a container, although loaded by the carrier, has been found to constitute "loading" for purposes of insulating a carrier for liability under Section 21. *Dei Dogi*, 733 F.Supp. at 775.

The policy behind Section 21 is "to enable the carrier to indicate, by use of the words 'said to contain,' that it is issuing a bill of lading based on the shipper's representations about acts undertaken by the shipper, of which the carrier has no firsthand knowledge." *Id.*

 Here, if § 80113 were to insulate any party from liability for the misdescription, it would be Yang Ming, as carrier. It is undisputed that Yang Ming did not seal, stuff, load or deliver the Laufer Containers or the Oceanbridge Containers. However, *Dei Dogi* does not suggest that a *shipper* is protected from such liability. As discussed herein, as between Laufer and Yang Ming, Laufer is the shipper. Laufer offers no evidence for the notion that merely because other shippers were involved earlier in the transportation chain, the Pomerene Act should be expanded to protect it as a shipper under the Yang Ming/Laufer Bill of Lading.

 Additionally, this Court finds that Laufer's contention that the "said to contain" language under the American/Laufer Bill of Lading extinguishes its responsibility to Yang Ming is also unpersuasive. Laufer offers no case authority which would justify this Court's overlooking of the Yang Ming/Laufer Bill of Lading before it. Even if this Court did look beyond the Yang Ming/Laufer Bill of Lading, the "said to contain" language only exculpates a *carrier* from liability where the goods are loaded by the shipper. 49 U.S.C. § 80113. Going one step backwards in the transportation chain, American claims that it did not load the cargo in question either[13]. Decl. of Kozlowski, ¶ 10.. Thus, this Court questions whether the exculpatory protection even could

**13.** This Court recognizes that Oceanbridge appears to be the underlying link between the goods leaving the warehouse and both shipments. For example, American sent its invoice for $14,500 American to Oceanbridge for "Ocean/Air Freight and Services." Decl. of Kozlowski, Exhibit C. In her declaration, Yong Kyu Jun, Oceanbridge's President, admits to picking up the eight Oceanbridge Containers from G.E.'s facility and delivering them to the BROOKLYN BRIDGE, although it claims that the containers were already stuffed and sealed. Decl. of Jun, ¶¶ 9–14. Oceanbridge makes no statement regarding the Laufer Containers.

transfer from American to Laufer. The essence of Laufer's argument here is that it relied on the particulars provided by American, who relied on the particulars from Oceanbridge. But COGSA itself presumes that each shipper will furnish the particulars in writing to the carrier, which the carrier will use to issue the bill of lading. 46 U.S.C.App. § 1303(3). The estoppel principal is also limited to bill of lading holders who have given value in good faith. *Industria Nacional Del Papel, CA v. M/V Albert F,* 730 F.2d 622 (11th Cir.1984) (doctrine of estoppel[14] is codified in the Pomerene Act to hold carriers liable to consignees and good faith assignees for value for misrepresentations in the bill of lading, and therefore vessel was liable to buyer for nondelivery of goods). There is no indica that Oceanbridge or American was a consignee, or paid value for the cargo at issue to Laufer. So, even in its carrier capacity, the estoppel principal cannot stand against Laufer. This Court will not construe the Yang Ming/Laufer Bill of Lading against Yang Ming, the carrier, on the basis that underlying bills of lading exist.

Accordingly, this Court finds that Yang Ming also has satisfied the first two elements of the *Atlantic Overseas* indemnity showing as against Laufer.

### 2. Yang Ming has failed to satisfy the third Atlantic Overseas' requirement.

The final showing which Yang Ming must establish in order to prevail on its right to recover indemnity from Oceanbridge and Laufer is that its alleged damages are "reasonable under the circumstances." As the movant, Yang Ming must demonstrate the absence of a genuine issue of fact as to reasonableness. Here, the sole evidence offered by Yang Ming regarding what transpired once the eighteen containers arrived in Tokyo until their final resale in Hong Kong, is a declaration of Satoshi Soto, Yang Ming's Manager of Business Development in Tokyo[15]. In his declaration, Sato declares that he is "responsible for handling all inbound business from the U.S.A." and that he has personal knowledge of the two Yang Ming shipments at issue. *See* Decl. of Sato and Supplemental Decl. of Sato, ¶¶ 1–2.

Both Laufer and Oceanbridge object to Sato's declaration as lacking personal knowledge and as inadmissable hearsay. This Court agrees.

On motions of summary judgment, supporting affidavits must be made on personal knowledge. Fed.R.Civ.P. 56(e). While personal knowledge may include inference, the inferences and opinions "must be grounded in observation or other first-hand personal experience." *Visser v. Packer Engineering Assoc.,* 924 F.2d 655, 659 (7th Cir.1991). Personal knowledge can be reasonably inferred from the declarant's position, the nature of his position, and the nature of his participation in the matters to which he swears. *Barthelemy v. Air Lines Pilots Ass'n,* 897 F.2d 999, 1018 (9th Cir.1990).

■■■ Sato's declaration includes no first-hand observations or participation in any of the described events, and does not offer any details as to the nature or responsibilities of Sato's position with Yang Ming as Manager of Business Development Inbound team. Instead, Sato makes

---

**14.** "If a bill of lading has been issued by the carrier, the *carrier* shall be liable to 'the holder of an order bill, who has given value in good faith, relying upon the description therein of the goods ... for damages caused by their failure to correspond with the description thereof in the bill at the time of its issue,'" unless shipper loaded the goods and words of "Shippers weight, load, and count" or other like works exist on the face of the bill of lading. *Elgie & Co. v. S.S. S.A. Nederburg,* 599 F.2d 1177, 1179 n. 2 (2nd Cir.1979) (emphasis added); *Industria Nacional,* 730 F.2d at 624–25.

**15.** Yang Ming also filed a supplemental declaration of Soto with this Court in effort to correct Defendants' objections thereto. This Court's analysis considers both Sato declarations.

only generalized statements as to Yang Ming, T.S. Shipping and Tokyo Customs' actions. For example, he states that "it was found that the four containers contained spare tires instead of cigars and cigarettes," "Yang Ming immediately began to inquire into disposal of the spare tires," "Yang Ming also checked the possibility of disposal or abandonment of the used tires in Japan but found that cost to be very expensive," "Yang Ming learned that it would be less expensive to dispose of the tires by shipping all of the eighteen container to Hong Kong," "Yang Ming timely searched for and located a company that would take delivery of the eighteen containers of spare tires," "Yang Ming arranged for shipment," "Yang Ming incurred demurrage charges," "Yang Ming incurred a shifting charge" and "Yang Ming incurred a customs clearance charge." Decl. of Sato, ¶¶ 1–11. No where in his declaration does Sato state precisely what efforts *he* expended, or how *he* participated in the attempt to resell the tires. The fact that Sato had personal knowledge of the shipments themselves does not necessarily infer that he also had personal knowledge of what transpired once the containers were rejected by Tokyo Customs. Moreover, while Sato lists the amounts of the fees for demurrage, shifting and customs charges, he does not offer any evidence that these fees are "reasonable" through an explanation of the two month delay in reselling the tires and the need to transport the tires on two separate vessels to Hong Kong.

■ Finally, Laufer and Oceanbridge object to the statements referenced above as inadmissible hearsay. Yang Ming counters that Sato's statements are present sense impressions within the hearsay exception of 803(1). Under 803(1) "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or *immediately thereafter*" is not excluded as hearsay. FRE 803(1). However, a statement admitted under 803(1) is deemed re-

liable only because of the contemporaneous requirement under the rule. *U.S. v. Hawkins,* 59 F.3d 723 (8th Cir.1995). This exception is clearly inapplicable to Sato's declaration, especially where it is uncertain from the face of the declaration when and where and by whom the "Yang Ming" statements were made.

Accordingly, while this Court finds that Yang Ming has prevailed on the first two elements of the *Atlantic Overseas* indemnity test, Yang Ming has failed to establish that its damages' prayer for indemnity is reasonable. As such, this Court **denies** Yang Ming's Motion for Partial Summary Judgment.

**D. *American Is Entitled to Summary Judgment as Against Laufer.***

■ American seeks summary judgment against Laufer's indemnity claim alleged by Laufer in the Laufer Third Party Complaint. In the event that Yang Ming is entitled to recover indemnity from Laufer, Laufer seeks to recover indemnity from American.

American argues that it did not pack or load the Laufer Containers on the SETO BRIDGE, and that Laufer knew that American was acting on behalf of Oceanbridge. American contends that the American/Laufer Bill of Lading identifies American as "exporter," preventing it from falling within the Merchant definition and being held liable for any misdescription of goods. Finally, it asserts that American/Oceanbridge bill of lading master prepared by American and sent to Laufer incorporated the "said to contain" disclaimer, exempting it from responsibility because it made no representations and warranties to Laufer regarding the contents of the ten Laufer Containers. Decl. of Kozlowski, Exhibit D.

Laufer contends that American is liable because American arranged for the truck delivery of the Laufer Containers to SETO BRIDGE. However, attached to the declaration of Frank X. Dipolito in Support of American's Motion is an invoice issued by

Oceanbridge to GE for $2,000 in trucking charges for the ten Laufer Containers delivered to the SETO BRIDGE. Decl. of Dipolito, Exhibit C. Further, Kozlowski states that the cargo never entered into American's possession. Decl. of Kozlowski, 10. Moreover, as between American and Laufer, American is listed as "exporter" and *not* shipper on the face of the American/Laufer Bill of Lading. Decl. of Kozlowski, Exhibit A; Decl. of Hamre, Exhibit C. Laufer provides no authority to suggest that an "exporter" has the same meaning as a "shipper." Applying the Merchant definition under Clause 2(c) of "the shipper, the consignee, the receiver, the holder of this bill of lading, the owner of the Goods or person entitled to the possession of the Goods and the servants or agents of any of these," this Court concludes that American is not a Merchant under the American/Laufer Bill of Lading. *See* American's Statement of Uncontroverted Facts, No. 18. Thus, Laufer is not entitled to recover indemnity from American.

Therefore, this Court **grants** American's Motion for Summary Judgment Against Laufer.

**E.** ***American is Entitled to Summary Judgment on the Laufer Third Party Complaint as Against Yang Ming.***

American seeks summary judgment against Yang Ming on the grounds that dismissal of all causes of action asserted in Yang Ming's underlying Complaint is proper as against American. This Court agrees.

Laufer impleaded American, as a third-party defendant, pursuant to Federal Rule of Civil Procedure 14(c). Rule 14(c) sets forth special rules for admiralty claims and provides that a defendant in an underlying admiralty complaint may, as a third-party plaintiff, implead a third-party defendant "who may be wholly or partly liable, either to the plaintiff or to the third-party plaintiff, by way of remedy over, contribution, or otherwise on account of the same transaction, occurrence." Fed.R.Civ.P. 14(c).

Where, as Laufer did in its Third Party Complaint, the third-party plaintiff demands judgment against the third-party defendant in favor of the original plaintiff, "the action shall proceed as if the plaintiff had commenced it against the third-party defendant as well as the third-party plaintiff." Fed.R.Civ.P. 14(c).

■ As to the first two claims of Yang Ming's Complaint for breach of contract and violation of COGSA, this Court agrees with American that such claims cannot stand because there is no underlying bill of lading contract as between Yang Ming and American. Yang Ming acknowledges this fact in its Opposition to this motion. It states "American is not liable to Yang Ming for Yang Ming's claims based on COGSA and the terms and conditions of the Yang Ming bill of lading contract of carriage with Laufer." Yang Ming Opposition, p. 8: 27–28, p. 9: 1. Thus summary judgment as to Yang Ming's breach of contract and violation of COGSA claims as against American is proper.

■ Next, American requests summary judgment as to Yang Ming's third cause of action for negligence and fifth cause of action for negligent misrepresentation. American contends, and this Court agrees, that negligence claims for purely economic losses are barred in admiralty and maritime cases. *Channel Star Excursions, Inc. v. Southern Pac. Transp. Co.*, 77 F.3d 1135, 1138 (9th Cir. 1996) (there is no claim in maritime tort for economic damages without actual physical injury). This Court is further persuaded by the fact that in order to prevail on a negligence theory, Yang Ming would have to establish that American owed a duty to Yang Ming to accurately describe the goods within the Laufer Containers. However, as discussed above under COGSA and the bill of lading contracts, the duty to provide the particulars lies on the *shipper*. Here, American could only be a shipper as between Laufer and American, which this Court rejected

above. Moreover, any equitable claim of estoppel may only be asserted as between the carrier and the holder of a bill of lading who has given value in good faith. *Industria Nacional,* 730 F.2d at 624; *Pacific Micronesian Lines, Inc. v. New Zealand Insurance Co.,* 366 F.2d 333 (9th Cir.1966) (argument of reliance on the description contained in bill of lading requires the holder to prove that it parted with value in reliance on the bill of lading). Yang Ming offers no evidence that American or Yang Ming paid for the amount of the goods shipped in the Laufer containers. The only evidence of monetary exchange in regards to the Laufer Containers is an invoice from American to Oceanbridge for the shipment in the amount of $14,500.00, and Laufer's claim that it prepaid Yang Ming for ocean freight charges. Decl. of Kozlowski, Exhibit C; Decl. of Hamre, ¶ 13. Also, American did not stuff or seal any of the eighteen containers. Therefore, as more fully discussed above, the estoppel principle is not available to Yang Ming as against American. For these reasons, American is entitled to summary judgment as to Yang Ming's third claim for negligence and fifth claim for negligent misrepresentation.

 Regarding American's fourth claim for fraud, this Court agrees with American that such claim cannot stand. The essential elements of a fraud claim include a false representation, knowledge of its falsity, intent to defraud, justifiable reliance, and damages. *Bank of the West v. Valley Nat'l Bank of Arizona,* 41 F.3d 471, 477 (9th Cir.1994) (quoting *Hackethal v. National Cas. Co.* (1987) 189 Cal.App.3d 1102, 234 Cal.Rptr. 853). Yang Ming failed to demonstrated that American possessed scienter, or an intent to defraud Yang Ming regarding the contents of the Laufer Containers. Yang Ming provides this Court with no authority that the mere inclusion of "said to contain" language can satisfy this threshold requirement for fraud. American, on the other hand, insists that it "never saw the cargo inside the containers and never had the containers in its possession." Decl. of Kozlowski, ¶ 10. Yang Ming points to no evidence to refute this fact. Therefore, this Court finds that Yang Ming's fraud claim as against American is unfounded.

Finally, as a result of the dismissal of the above claims against American, Yang Ming's final claim for declaratory relief as to the rights and liabilities between Yang Ming and American is now moot because no "actual controversy" remains between these two parties. 28 U.S.C. § 2201.

Accordingly, to the extent that Yang Ming's claims under the Complaint reach American, as Third–Party Defendant, under Rule 14(c), this Court **grants** American's Motion for Summary Judgment as against Yang Ming.

*Conclusion*

Based on the above discussion, this Court

1. **DENIES** Plaintiff Yang Ming Marine Transport Corporation's Motion for Partial Summary Judgment;

2. **GRANTS** Third–Party Defendant American International Cargo, Inc.'s Motion for Summary Judgment Against Third–Party Plaintiff Laufer Freight Lines, Ltd; and

3. **GRANTS** Third–Party Defendant American International Cargo, Inc.'s Motion for Summary Judgment Against Plaintiff Yang Ming Marine Transport Corporation.

IT IS SO ORDERED.